Ex PARTE GUISTI

No. 2827

August 8, 1928.                                    269 P. 600.

*C. E. Robins,* for Petitioner:

*M. A. Diskin,* Attorney-General; *Wm. J. Forman,* Deputy Attorney-General; and *J. A. Jurgenson,* District Attorney, for Respondent:

## OPINION

By the Court, COLEMAN, J.:

This is an original proceeding in habeas corpus to have Guilio Guisti, a minor under the age of eighteen years, released from the custody of Frederick Davis, as superintendent of the Nevada School of Industry.

On the 10th of April, 1928, a petition was filed in the juvenile department of the Sixth judicial district court, in and for Pershing County, charging Guilio Guisti with being a delinquent child. This petition was verified on information and belief as authorized by statute. Thereupon a summons was issued directing the defendants to appear at two o'clock p. m. of the day mentioned. The parents acknowledged in writing upon the summons service of the petition, waived service of the summons, and agreed to be present in person at the hour mentioned. At the time set all of the defendants appeared in court in person, without counsel. Upon being informed of the nature of the charge, Guilio Guisti admitted having been caught in possession of a bottle of wine. A hearing was had to the court, in which considerable evidence was given, at the conclusion of which the court found all of the allegations of the petition to be true, and ordered that the said Guilio Guisti be committed to the Nevada School of Industry.

After the said minor had been committed, a petition for a writ of habeas corpus was presented to this court and a show cause order made. The petition herein alleges the proceedings in the district court, as stated; that an application for a writ of habeas corpus had been presented to the Fourth judicial district court of the State of Nevada, in and for Elko County, the district and county in which the said minor is confined, and that the same had been denied; it alleges that the court was without jurisdiction to make the order of commitment

under which custody of the said minor is maintained, in that the necessary facts required by section 731 of Rev. Laws are not averred; that no notice of the pendency of said petition was properly given to the parents of the said minor; that the defendants were denied "due process of law," in that they were in effect denied a jury trial, denied the right to answer said petition, and never had an opportunity to seek and obtain the advice of counsel; ·that no evidence was given showing or tending to show that the parents of said minor were unfit or improper guardians of said minor, or unable to care for, protect, train, educate, correct, control or discipline said child, or that said parents or either of them consented that said child be taken from their custody. .

■■ We will consider first the contention that the petition filed in the district court did not aver sufficient facts to give that court jurisdiction to make the order of commitment complained of. Section 731, Rev. Laws, which is the section authorizing the filing of such a petition, so far as is here material, reads:

"Any reputable person, being a resident of the county, may file with the clerk of the court having jurisdiction of the matter, a petition in writing setting forth that a certain child, naming it, within his county, is either dependent, neglected or delinquent as defined in section 1 hereof; and that it is for the interest of the child and this state that the child be taken from its parent, parents, custodian or guardian and placed under the guardianship of some suitable person to be appointed by the court; and that the parent, parents, custodian or guardian of such child are unfit or improper guardians, or are unable or unwilling to care for, protect, train, educate, correct, control or discipline such child, or that the parent, parents, guardian or custodian consent that such child shall be taken from them."

It is said that a petition, to confer jurisdiction, must contain the following allegations: (1) The name of the child; (2) that it is either dependent, neglected or delinquent; (3) that it is for the interest of the child and this state that the child be taken from its parents and placed

under the guardianship of some person to be appointed by the court; (4) that the parents of such child are unfit or improper guardians, or are unable or unwilling to care for, protect, train, educate, correct, control or discipline such child, or consent that said child be taken from them, and that the matters stated under the four heads must be alleged in the conjunctive.

The portion of section 731, Rev. Laws, quoted, is not in the disjunctive, but is in the conjunctive as to the matters required to be alleged in the petition when it is sought to take a child from the custody of its parents, or other person legally entitled to its custody, and the petition in question not containing allegations in the conjunctive of all of said matters did not confer jurisdiction to make the order in question, though it did confer jurisdiction authorizing the court to proceed, and, upon proper showing, to make findings and orders requiring the minor to report as provided in section 736.

That the point made is well taken is not debatable. In fact, the Attorney-General concedes the correctness of the contention. Such was the holding in Ex Parte Satterthwaite, 52 Mont. 550, 160 P. 346, and in Mill v. Brown, 31 Utah, 473, 88 P. 609. There is no dissent on this point among the authorities.

However, it must be kept in mind that under designation 4 any one of several matters may be alleged, but it must be alleged together with the other matters required.

It is clear that the minor must be discharged from custody, but it does not necessarily follow that he was not properly found to be a delinquent child and that an order may not be made requiring him to report as above intimated. In fact, we think there is no merit in the other contentions made.

■ The procedure against one who is charged merely with being a delinquent child, under statutes such as ours, is almost universally held to be purely statutory in nature, and is not criminal nor quasicriminal, nor a proceeding according to the course of the common law.

The juvenile court law is based upon the inherent right of the State to assume the care, custody and control of a child when conditions make it necessary for the welfare of the child and the state that it be done. In England, long before statutes such as ours were thought of, Lord Redesdale said in Wellesley v. Wellesley, 2 Blight (N. S.) 124, that the right of a chancellor to exercise powers such as are conferred by our statute had not been questioned for 150 years.

The Supreme Court of Michigan, having under consideration a similar statute, in the case of Robison v. Wayne Circuit Judges, 151 Mich. 315, 115 N. W. 682, said:

"*  *  *  In a large number of cases considered by the courts of last resort in various states similar legislation has been under consideration. The beneficent character of legislation making provision for the care of unfortunate, delinquent or neglected children has been generally recognized. But a single case has fallen under our notice in which the court has looked with jealousy upon legislation of this character, and that is the case of People ex rel. O'Connell v. Turner, 55 Ill. 280, a case which, in its essential features, has been discredited by a later decision of the supreme court of Illinois in Petition of Ferrier, 103 Ill. 367, and which is now chiefly notable as an example of the vigor with which that which is not the law may be stated. But in the following cases, Ex Parte Crouse, 4 Whart. (Pa.) 11; Commonwealth v. Fisher, 213 Pa. 48; State v. Brown, 50 Minn. 353 (16 L. R. A. 691); Milwaukee Industrial School v. Milwaukee County Sup'rs., 40 Wis. 328; Mill v. Brown, 88 P. (Utah) 609, the distinction is noted between cases of this character in which the investigation is into the status or needs of the child, and a case where his offenses are being considered for the purpose of administering punishment. See, also, Hunt v. Wayne Circuit Judges, 142 Mich. 93.

"As was said in State v. Brown: 'A person committed to the care and custody of a person in charge of an

institution of the character of the Minnesota State Reform School is not "punished" nor is he "imprisoned" in the ordinary meaning of those words.'

"So in the Petition of Ferrier, it was said: 'This is not a proceeding according to the course of the common law, in which the right of a trial by jury is guaranteed, but the proceeding is a statutory one, and the statute, too, enacted since the adoption of the constitution. There was not, at the time of such adoption, the enjoyment of a jury trial in such a case.'

"Quoting Cooley on Constitutional Limitations (7th ed.), where, at p. 459, it is said: 'In those cases which formerly were not triable by jury, if the legislature provide for such a trial now, they may doubtless create for the purpose a statutory tribunal, composed of any number of persons, and no question of constitutional power or right could arise.'

"Such legislation as that under consideration is but a transfer of the jurisdiction which formerly reposed in the court of chancery, in the exercise of the right of the king as parens patriæ to the guardianship of children, to the juvenile courts which perform the duty of seeing that the child is properly cared for.

"We are satisfied that, so far as the law authorizes the determination of the status of the child, and authorizes the commitment of the child to the custody of a probation officer or to the custody of the keeper of one of the industrial schools for the purpose of education and reformation, the proceeding may be said not to be a criminal proceeding."

We might quote from a multitude of authorities to the same effect, but since the rule stated is now generally accepted, we content ourselves with citing 31 C. J. p. 1105, and note to Lindsay v. Lindsay, Ann. Cas. 1914A, p. 1227.

From what has been said it follows that the constitutional and statutory provisions relative to criminal procedure are not applicable, but that the court need only comply with the requirements of the provisions of the act under which the petition was filed. 31 C. J. p. 1105.

■ Section 731 provides for the issuance of summons, and the following section states what it shall contain. Summons was issued in compliance with the above, and the parents indorsed upon the summons an acknowledgment of a receipt of a copy of the petition and waived the service of summons and agreed to be present in court at the time ordered. They thereafter appeared and produced the minor in court. Upon their appearance the court called up the matter by title, stating that it had been instituted by the filing of petition, and that summons had issued thereon, and that in answer to the summons all of the defendants were in court. It then stated the nature of the charge, ordered the minor to stand up, and addressing the minor said: "What have you to say with regard to the charge?" In response the minor said: "Your honor, I was caught in possession of one of the bottles of wine." He was then asked numerous questions, to which he gave answers. While it is held that, when the proceedings are not criminal in nature, an arraignment is not necessary (31 C. J. 1109), the proceeding in the instant case was substantially an arraignment and the entry of a plea of guilty. This being done, there was no occasion for the calling of a jury, as there was no issue to try, but merely the making of findings by the court, and the determination of the question of the proper order to be made.

But we are clearly of the opinion that under no circumstances would due process have been denied had the court, without any statement from the minor or his parents, proceeded to hear and dispose of the matter without a jury, unless one was demanded. It was not the duty of the court to call a jury of its own motion. Many of the earlier juvenile court acts make no provision for a jury, and they have been held valid. Our act, which was adopted after many others had been upheld, provides that "any person interested may demand a jury." This places a positive duty on the interested person to make the demand if a jury is desired. They cannot sit by and gamble on the outcome, and after an adverse finding assert their neglect as a ground for

relief. If the statute provided that a jury should be called unless waived, it would then have been safer for the court to have called a jury, unless an actual waiver was made, though the great weight of authority holds that going to trial without making a demand for a jury constitutes a waiver. See 35 C. J. 201 and 211.

What we have said disposes of the jurisdictional matters urged during the argument.

It is ordered that Guilio Guisti be discharged from custody, but, in view of the findings of the court, we think it has jurisdiction to require that he report as provided by section 736.