People of the State of Illinois, Plaintiff-Appellee, v. Charles T. Brown, Defendant-Appellant.
People of the State of Illinois, Plaintiff-Appellee, v. Leonard Witherspoon, Defendant-Appellant.

Gen. Nos. 50,618 and 50,620.

First District, First Division.

October 31, 1966.

Philip M. Basvic, of Chicago, for appellant, Charles T. Brown.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant, Leonard Witherspoon.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Thomas M. Burnham and Joel M. Flaum, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant, Charles T. Brown, was jointly indicted with James E. McIntyre and Leonard Witherspoon for the offense of robbery. McIntyre pleaded guilty and testified for the State. After a joint bench trial, Brown and Witherspoon were found guilty, and each was sentenced for a term of five to ten years. Brown and Witherspoon filed separate appeals based on different grounds, which are consolidated in one opinion for convenience and clarity.

At about 5:00 a. m. on November 10, 1963, the complaining witness, Elgin Richard Dickerson, was asleep, riding on a southbound elevated train in Chicago. He awoke and saw Witherspoon with his wallet, taking money from it. A second man (defendant Brown) was taking off Dickerson's shoes. A third man (McIntyre) was standing over Dickerson beside Brown. Dickerson reached for his wallet, and Witherspoon "hit me under my left eye, with his fist. I fell back in the seat. . . . They take my money out, threw the wallet down, got off at 55th Street. I told the conductor what happened and he told me to report it. . . . Around 7:00 a. m. November 10, 1963, I went to the 2nd District Police Station.

366

Officers asked me to look at some fellows. I see this Brown, defendant in this case. I had around $30.00. I did not give anyone permission to take that money from me. I had seen Leonard Witherspoon before, on the Subway train. I did not know his name. I had seen Charles Brown before on the Subway. I did not know his name."

On cross-examination, Dickerson testified he had been in a tavern with two friends, and when he left the tavern, "I had around $28 or $30. I had two 10's, I had two 5's and some 1's. I can't exactly remember. That is a long time. . . . I dozed off. I wasn't drunk, wasn't feeling high, I didn't drink that much. I was more tired than drunk. I was awakened by three men. . . . I know the men by seeing them. . . . Yes, I actually did see Witherspoon take the money from my wallet."

In testifying for the State, McIntyre said that on November 10, he was on a southbound elevated train with Brown and Witherspoon. Dickerson was asleep, and Brown and Witherspoon were trying to pick his pockets. "I didn't see either of them take anything out of his pockets. I was lookout, watching both ways. . . . Dickerson woke up, and well they hit him. Leonard Witherspoon. We hurried and got off. . . . No, I did not receive any money taken from Dickerson."

A CTA police officer testified he knew the three defendants by name. On November 10, 1963, at approximately 5:30 a. m., he first observed them standing on the 58th Street platform. After he and his partner had proceeded to the 61st Street station and returned to the 58th Street station, they stood on the 58th Street platform for approximately fifteen minutes until another southbound train had come into the station. In the front car of this train, the witness "saw Brown and Witherspoon . . . holding this man down on the seat, and Brown was going through the man's pockets." (This is not the offense with which we are here concerned.)

367

Brown and Witherspoon saw the officer and ran off the train. After a short chase, Brown and Witherspoon were captured and taken into the 2nd District Police Station. The officer was present when Dickerson later made his identification.

Another witness for the State, a Chicago police officer, testified that he searched defendants Brown and Witherspoon in the police station at 48th and Wabash Avenue and found $12 on Brown's person and $18 on Witherspoon. On cross-examination, he said the total amount found was $30, "which included 15 one dollar bills."

Defendant Leonard Witherspoon testified that he had known Dickerson since 1956—"He was a pickpocket with me." He denied seeing Dickerson on the train, taking his wallet or money, or that he hit him.

## APPEAL NO. 50,618

Defendant Brown contends there is reasonable doubt of his guilt because (1) of his failure to possess the fruits of the crime; (2) Brown and Witherspoon never left the elevated structure and when arrested 45 minutes after the alleged robbery, they had $30 between them, which included 15 singles, and "the complaining witness could not have had fifteen singles, by his own testimony"; (3) the indictment charged the taking of $28 and a ring, and the record is silent as to the ring; (4) as McIntyre pleaded guilty, it must be assumed he robbed Dickerson of $28 and the ring and escaped with the fruits of the crime; and (5) Dickerson's identification of Brown was "ambiguous, vague and unclear."

 Authorities cited include People v. Sheppard, 402 Ill 347, 83 NE2d 587 (1949), where the court said (p 351):

> "In criminal cases it is the duty of this court to review the evidence, and, if there is not sufficient credible evidence, if it is improbable or unsatisfac-

tory, or not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed."

And on p 352:

"It is the duty of a court and jury to resolve all facts and circumstances in evidence on the theory of innocence rather than guilt, if that reasonably may be done, and, where the entire record leaves us, as this one does, with grave and substantial doubt of the guilt of the plaintiff in error, we will reverse the judgment."

 Using the foregoing principles as guidelines here, we believe this record presents sufficient credible evidence to sustain defendant Brown's conviction, and "the entire record" here does not leave this court with grave and substantial doubt of the guilt of defendant Brown. Dickerson's version of the robbery was substantially corroborated by McIntyre. The testimony of an accomplice is competent evidence if it is of such a character as to prove guilt beyond a reasonable doubt, although it is subject to grave suspicion and should be acted on with great caution. (People v. Lane, 29 Ill2d 326, 194 NE2d 272 (1963).) The variance between the money stolen and the money subsequently found on the accused does not, of itself, create a reasonable doubt as to the guilt of defendants. Corroboration of Dickerson's testimony was not required as to every detail, if there was sufficient evidence to establish the elements of the crime of robbery. (Burke v. People, 148 Ill 70, 74, 35 NE 376 (1893).) As there was no evidence showing that a ring was taken from Dickerson, the ring allegation in the indictment may be rejected here as surplusage.

██ ██ Defendant Brown further contends that "trying to pick the pocket of a man asleep is not robbery under the statute. Nor is it robbery beyond a reasonable doubt, as charged in the indictment. . . . The gist of the

369

offense of robbery is the force or intimidation and taking from another, against his will, a thing belonging to him or in his custody." (People v. Funk, 325 Ill 57, 155 NE 838 (1927).) Defendant Brown argues that the striking came from Witherspoon and after Dickerson awakened and found Witherspoon with the wallet and money, and "any force, or threatened force, must come before or during the time the property is taken." We find no merit in this contention. The series of events— the taking of the wallet, the attempt to recover it by Dickerson, and the striking of Dickerson by Witherspoon —constituted a single incident or occurrence or the "res gestae of the crime." See People v. Chambliss, 69 Ill App2d 459, 217 NE2d 422 (1966).

We find no merit in defendant Brown's contention that "the variance between the charge in the indictment and the proof was too great to warrant a conviction." In People v. Lawler, 23 Ill2d 38, 177 NE2d 183 (1961), it is said (p 39):

> "Under an indictment for robbery it is not necessary to prove the particular identity or value of the property taken, further than to show it was the property of the victim or in his care and had a value."

And in People v. Figgers, 23 Ill2d 516, 179 NE2d 626 (1962), it is said (p 518):

> "It is well settled that a variance, to vitiate a trial, must be material and be of such character as may mislead the accused in making his defense or expose him to double jeopardy. . . . Also of importance here is the general rule that immaterial matters, or matters which may be omitted from an indictment without rendering it insufficient or doing damage to the material averments, may be regarded as surplusage. . . . Accordingly, where an indict-

ment charges all of the elements essential to an offense under a statute, other matters unnecessarily added may be rejected as surplusage."

These statements apply both to the ring and the currency variance. The evidence shows that Brown participated in the taking of property from the person of Dickerson, and that the use of force was an integral part of the taking. The indictment charged all of the elements essential to the offense of robbery, and the proof offered by the State sustained the charge beyond a reasonable doubt.

For the reasons given, the conviction of defendant Brown of the offense of robbery is affirmed.

## APPEAL NO. 50,620

Defendant Witherspoon contends that he did not get a fair trial because (1) evidence of a distinct and separate offense was improperly introduced in evidence; (2) cross-examination was restricted; and (3) defendant was denied counsel of his own choice.

■ Defendant asserts that the admission of the testimony of the CTA policeman that he saw Witherspoon and Brown holding down another man and going through his pockets comes within the general rule that "proof of separate crimes wholly disconnected from the crime charged" is reversible error. (People v. Gawlick, 350 Ill 359, 364, 183 NE 217 (1932) ; People v. Gleason, 36 Ill App2d 15, 183 NE2d 523 (1962).) Defendant further contends that the error was compounded by the cross-examination of Witherspoon on that point.

■ ■ We believe the testimony of the CTA policeman was properly admitted. It comes within the guidelines set forth in People v. Tranowski, 20 Ill2d 11, 169 NE2d 347 (1960), where it is said (p 16) :

371

"It is the general rule that evidence that another or other crimes were committed by a defendant, wholly independent of and disconnected from the crime for which he is being tried, is not admissible. . . . But a corollary of the rule is that evidence, relevant to the main issue, which serves to place a defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive or knowledge, is admissible. . . . [T]his evidence served to place defendant in the area at the correct time and establish a scheme or design which was strikingly similar to the offense charged in the indictment."

 However, we think it was improper for the State to cross-examine defendant Witherspoon on a crime for which he had neither been charged nor for which he was on trial. In a proper case this might be a ground for reversal, but under the circumstances of this case this error does not require reversal. As said in People v. Tranowski, p 17:

"It is not our policy to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error."

Defendant Witherspoon next contends that the cross-examination of Dickerson, the complaining witness, was unduly restricted in that defense counsel was precluded from examining Dickerson as to whether he was a narcotics addict. Defendant argues that whether or not the witness was a narcotics addict was relevant to the general reliability and credibility of his testimony. "The chronic morphinomaniac is often a confirmed liar—the truth is not in him." (People v. Crump, 5 Ill2d 251, 125 NE2d 615 (1955).) Also, it is contended that the examination of the accomplice, McIntyre, was unduly re-

stricted in defendant's attempt to show discrepancies between the testimony of the accomplice witness and the complaining witness.

■■ We find no merit in either of these points. There was no evidence that the complaining witness was a narcotics addict, and defense counsel made no offer of proof to support his intended line of questioning. The attempt to cross-examine a witness as to possible impeachment has been held improper unless the examiner is prepared to make a showing to support the intended questions. (People v. Wallenberg, 24 Ill2d 350, 353, 181 NE2d 143 (1962).) Cross-examination of the accomplice witness was limited only with regard to where the witness was standing at the time of the robbery and whether Dickerson was wrong in his version. In sustaining the objection, the court remarked, "I heard the evidence." Any further line of inquiry in that regard was a matter for the court's discretion.

Finally, defendant contends that he was "denied counsel of his own choice." Cited is People v. Cohen, 402 Ill 574, 85 NE2d 19 (1949), where it is said:

> "[T]he defendant had an absolute right to be represented by counsel. That the right so conferred includes the right to employ counsel of his own choice does not admit of argument."

Defendant asserts that "before the trial commenced, the court asked if both sides were ready, and the defendant answered that he was not ready, and asked for a continuance, so that he could get another lawyer of his own choosing. The reasons he gave were that he had not paid his lawyer and that certain witnesses were missing. The defendant was not out on bail, so that the request of this nature should not be construed as merely a dilatory tactic."

As to this contention, the State replies that defendant was represented by retained counsel of his own choosing

373

—"The record discloses no attempt by the defendant to obtain a substitution of attorneys prior to trial. The attorney of record, Mr. Gerber, announced ready for trial. Thus, the defendant's first reason for requesting a continuance, that of not having finished paying his lawyer, was of no consequence. In addition, after the court represented to the defendant that his attorney was known as a reputable one, the defendant did not pursue this objection to commencing trial and acknowledged the court's comment."

██ ██ From our examination of this record, we agree with the State that "while an accused in a criminal case has the constitutional right to be represented by counsel of his own choosing, such a right may not be employed as a weapon to indefinitely thwart the administration of justice, or otherwise embarrass the effective prosecution of crime. People v. Solomon, 24 Ill2d 586, 590." We find no merit in this contention.

For the reasons given, the conviction of defendant Witherspoon is affirmed.

Appeal No. 50,618—Judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Appeal No. 50,620—Judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.