(No. 41097.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* RONALD C. NOVOTNY, Appellant.

*Opinion filed Nov. 22, 1968.—Rehearing denied Jan. 28, 1969.*

DRISCOLL & CLEARY, of Chicago, (WILLIAM J. NELLIS, and BLACHER, BUCKUN & NELLIS, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JOHN M. GOLDBERG, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Ronald C. Novotny, 19 years old, was found guilty of aggravated battery in a bench trial in the

circuit court of Cook County. His petition for probation was allowed, and he was admitted to probation for one year with 30 days imprisonment as a condition thereof. Two grounds are urged for reversal: (1) that he was deprived of the right to trial by jury when his attorney, without consulting him, waived a jury trial in return for the State's agreement to reduce the charge from a "felony" to a misdemeanor, and (2) that he was not proved guilty beyond a reasonable doubt. As to (1) both the State and defense counsel characterize the original charge as a felony. The record contains only one complaint, a partially printed and partially typed form, which charged defendant with aggravated battery, an offense for which the alternative penalties provided may be imprisonment in the penitentiary for 1 to 10 years or imprisonment in a penal institution other than the penitentiary for not to exceed one year. (Ill. Rev. Stat. 1967, chap. 38, par. 12—4(a).) Under our decisions prior to adoption of the Criminal Code of 1961 the presence of the alternative penalty of imprisonment other than in the penitentiary rendered the offense a misdemeanor. (*Lamkin* v. *People,* 94 Ill. 501; *Baits* v. *People,* 123 Ill. 428; *People* v. *Stavrakas,* 335 Ill. 570, 582.) Since no substantial difference exists between the definition of "felony" (Ill. Rev. Stat. 1961, chap. 38, par. 585) which preceded the 1961 Code and the one presently appearing therein (Ill. Rev. Stat. 1967, chap. 38, par. 2—7), it would seem that the decisions construing the former statutory definition remain valid. This does not, however, alter our disposition of the case, for the reasons hereinafter indicated.

While the complaint in this cause was filed July 11, 1967, and alleges an offense on July 9, the complaining witness referred to August 8 as the date involved. However, no point is made of this, and it seems apparent that the conduct testified to actually occurred on July 8 and 9. Com-

plainant, Thomas Esones, a Cook County deputy sheriff, testified that on August 8 he drove to a friend's house in Summit about 8:00 P.M. to play cards. Esones testified that at approximately 2:35 A.M. the next morning while driving home alone from the card game he noticed a crowd of 10 to 15 youths in a parking lot at the corner of Archer and Mayfield in Chicago; he saw two women nearby and testified he "pulled on the end of the lot, and * * * [t]hey said that there was youths swearing. They were afraid to get in their car." He then got out of his car, approached the group, identified himself as a deputy sheriff, displayed his badge to the youths, and asked them why they were swearing at the two women. The witness stated that the boys denied swearing, and Esones responded that he would call a Chicago squad car to tell them to move on. At this point Esones testified several of the youths attacked him, and the defendant struck him in the head with a pipe. He stated that soon after the initial attack by "Novotny and his friends" the youths administered another beating during which they took the officer's badge and threw it away. Esones was hospitalized with a brain concussion and a back injury for one week as a result of this incident. On cross-examination the witness admitted that he had drunk a "couple of beers", but no more than two, earlier in the evening while he was playing cards. He further stated that when he was knocked to the ground by the defendant and the others, he picked up a tail pipe that was lying on the ground and started swinging to defend himself.

The second witness presented by the State was Officer Hycner of the Chicago Police Department who arrested the defendant about four hours after the complaining witness was attacked. Officer Hycner was assigned patrol duty in the area of Archer and Mayfield, and after receiving a report of the incident he went to the hospital where Esones was being treated. The officer testified that when he visited

Esones shortly after the attack, Esones asked him if he would go to "look for his star, because they threw his star away." Officer Hycner proceeded to the intersection of Archer and Mayfield, and found the badge of the complaining witness in the middle of Archer Avenue. The officer then acquired information which led him to the house of the defendant where he interviewed Novotny, and noticed a laceration on his neck. The defendant agreed to accompany the officer to the hospital where Esones positively identified him as one of the assailants. Officer Hycner stated on cross-examination that the defendant was at all times co-operative.

The defendant and four other witnesses testified for the defense. Novotny said he had been out on Saturday night with several friends and that early the next morning he arrived at the shopping center parking lot at Archer and Mayfield where it was the practice of his friends to congregate on Friday and Saturday nights. According to the defendant, when Esones walked up to the group of youths he appeared to be drunk, *i.e.,* he reeled when he walked, slurred his speech, and had bloodshot eyes. Novotny stated that Esones accused the group of swearing at him and two girls who were riding in his car, that Esones yelled at the youths and pushed them around; and that at one point the defendant asked him, "Why don't you shut up?" Complainant's response to this remark, according to the defendant, was to grab the defendant by the shirt collar, and when the defendant pushed away from his grasp Esones started to fight with him. The defendant stated that in the process of defending himself he knocked Esones down, and Esones then picked up a pipe from the ground and struck the defendant causing a head wound that required five stitches. Novotny asserted that at no time did the complaining witness identify himself as a police officer or display his badge. The defendant further testified that he never

wielded a pipe against Esones but rather the head injuries suffered by Esones were incurred when he was knocked down and his head struck an abutment in the parking lot.

The four remaining witnesses presented by the defense included the defendant's twin brother and three other youths who were friends of the defendant and who were present in the parking lot when the defendant and the complainant came to blows. The testimony of these four witnesses substantially corroborated defendant's version of events. A composite' summary of their testimony would be that Esones was belligerent, apparently drunk, and the aggressor in the fight during which Esones struck the defendant with a pipe. Furthermore, none of these witnesses recalled ever hearing Esones announce his office or seeing him display his badge.

The court found the defendant guilty of aggravated battery as charged in the complaint. The defendant thereafter filed post-trial motions to vacate the judgment, for a new trial and in arrest of judgment. These were denied. Included in the defendant's post-trial motion was the allegation that he "was deprived of his statutory and Constitutional right to a jury trial." This argument is based on the allegation that defendant's retained counsel waived a jury trial on behalf of his client without first consulting Novotny as to whether he wanted a jury or bench trial. Defendant's testimony and affidavit in the post-trial proceedings indicate that he was inexperienced in criminal matters, that he did not know or understand that he had a right to trial by jury, and that he did not discuss with his attorney the availability or advisability of a jury trial. His attorney also testified in the post-trial proceedings. It is clear that while both the prosecution and defense may have been mistaken in thinking the charge a felony, defendant's counsel was interested in eliminating the possibility of a penitentiary sentence. It is admitted that counsel's waiver of a jury trial was in exchange for the State's reduction of the charge. It seems

clear, also, that a penitentiary sentence could not thereafter have been imposed regardless of the felony or misdemeanor character of the original complaint. While not conclusively established by the record the complaint contained therein was apparently the only one ever filed. Printed near the top of this form was the word "F E L O N Y". This complaint was filed July 11, the defendant remanded to the sheriff's custody and a preliminary hearing apparently scheduled, on the defendant's motion, for July 28. On that date the cause was again continued on defendant's motion to August 28. When asked by the clerk on the 28th if they were "Ready for hearing?", defense counsel answered "Yes", the assistant State's Attorney requested and was granted leave of court "to amend this complaint to read misdemeanor instead of felony", defense counsel announced "No objection. Waive a jury. Defendant's plea is not guilty and trial by this Court." The amendment apparently consisted solely of striking the printed word "F E L O N Y" on the complaint and substituting an illegible word which appears to be an abbreviation of "misdemeanor". At the time the foregoing statements were made to the court defendant was standing in front of the bench next to his attorney according to the latter's testimony at the hearing on the post-trial motions. Defendant testified thereat to the effect that he heard and understood the conversation regarding reduction of the charge from felony to misdemeanor but does not recall hearing any reference to the word "jury". Defendant's attorney also testified that he had approached the assistant State's Attorney on several occasions about the possibility of reducing the charge, one of which was on the morning of trial and another at an earlier date; that he indicated on the morning the case was heard "that if there was a reduction in the charge we would go to trial"; that the assistant prosecutor stated "the only way that we would be able to go to trial was—at this time—would be for you to waive a jury." Defendant's trial attorney also answered

"I don't recall" when asked whether he at any time communicated with defendant about a jury; he further testified he "knew that as a practical proposition that they could go ahead and have the preliminary hearing, and if the Court saw fit they could bind him over to the Grand Jury", that bond had been set at $5000, that the complaining witness was a deputy sheriff, "and I was apprehensive".

In support of his contention that his rights were violated when he was tried before a judge without a proper jury waiver, the defendant cites our statement in *People* v. *Williams,* 36 Ill.2d 194, 202, that "there are a number of rights which, under our criminal procedure, can only be waived by the affirmative act of the accused, for example, trial by jury must be understandingly waived by defendant in open court  *  *  *." This statement however does not necessarily require that a defendant must personally announce a waiver of the right to a jury trial. In *Hensley* v. *United States* (D.C. cir.), 281 F.2d 605, 607-8, the rule is set out that "In general, the relation of attorney and client is one of agency and the general rules of law applicable to agencies apply. Hence, the accused ordinarily speaks and acts through his attorney  *  *  *. 'A prisoner who defends by counsel, and silently acquiesces in what they agree to, is bound in the same manner as any other principal by the act of his agent.' " (*Cf. People* v. *Brown,* 39 Ill.2d 307, 310.) In *Hensley* the court concluded that where the defendant's counsel agreed to dismiss the jury that had been impaneled, and the dismissal occurred in the presence of the defendant without any objections on his part such lack of action at that time would be construed as an express waiver of the right to a jury trial. Similar holdings appear in *Eliachar* v. *United States* (D.C.C.A.), 229 A. 2d 451, and *State* v. *Skaff,* 22 Wis. 2d 269, 125 N.W.2d 561, to the effect that the presence and silent acquiescence of a defendant where his attorney waives a jury trial "suf-

ficiently demonstrates the authority of the attorney to speak for the defendant, and makes the attorney's statement his own." (125 N.W. 2d at 563; see also, *Chislom* v. *Warden,* 223 Md. 681, 164 A. 2d 912.) In this jurisdiction it has been held that a defendant must be said to have acquiesced when he has permitted his attorney in his presence and without objection on his part to waive a jury trial. (*People* v. *King,* 30 Ill. App. 2d 264; *People* v. *Stolfo,* 32 Ill. App. 2d 340.) In *Application of Banschbach,* 133 Mont. 312, 323 P.2d 1112, the rationale behind these decisions is set forth as follows: "Of course, if accused proceeds to trial without making his desires for a jury known, then he waives a jury trial under the rule stated in Ex parte Lewis, 85 Okl.Cr. 322, 188 P.2d 367, and Ex parte Guisti, 51 Nev. 105, 269 P. 600. In other words, he is not permitted to gamble on the outcome before the judge without a jury and then if dissatisfied make a belated demand for a jury." 323 P.2d at 1114-5.

In the post-trial proceedings in this case the trial judge expressed what we believe was justifiable incredulity at the contention of the defendant that he was not aware of the occurrence of the jury waiver. The judge commented that defendant claimed that "he didn't hear, his own lawyer standing right beside him, saying he waived the jury. I heard him say he waived the jury and the Court Reporter also heard his attorney say he waived the jury. So, perhaps he doesn't recall." It is not necessary for us, however, to expressly hold in this case that the silent acquiescence of the defendant during the oral announcement by this attorney that a jury trial was waived was sufficient ratification of his attorney's act to effectively bind defendant to the consequences of that act. There is the additional unique factor that the jury waiver was the *quid pro quo* for the reduction of the seriousness of the charge. At the time that defense counsel acted on behalf of his client to waive a jury

trial, he was pursuing a strategy by which the defendant gained the distinct and critical advantage of having the charge against him reduced substantially.

" 'It is settled law that when an accused is present in court and represented by competent counsel, he is bound by the actions and concessions of counsel, and that even constitutional rights may be waived in the course of a trial.' Martelly v. State, 230 Md. 341, 348, 187 A.2d 105 (1963); Canter v. State, 220 Md. 615, 155 A.2d 498 (1959). See also Wanzer v. State, 202 Md. 601, 97 A.2d 914 (1953); Henze v. State, 154 Md. 332, 140 A. 218 (1928); National Ass'n For Advance. of Colored People v. Pye, 96 Ga. App. 685, 101 S.E.2d 609 (1957); People v. Hammond, 26 Cal. App. 2d 145, 78 P.2d 1172 (1938); State v. Grier, 209 N.C. 298, 183 S.E. 272 (1936); Jones v. United States, 72 F.2d 873 (7 Cir. 1934); 9 Wigmore on Evidence (3rd ed.), Secs. 2588-2592, especially Sec. 2592; 2 Jones on Evidence (5th ed.), Sec. 358 (as to judicial admissions in criminal cases); cf. Hutcheson v. United States, 369 U.S. 599, 82 S. Ct. 1005, 8 L. Ed. 2d 137 (1962)." *Prescoe* v. *State,* 231 Md. 486, 191 A. 2d 226, 231-2.) Even though the result of this waiver may now be unsatisfactory to defendant, we do not agree that it can be said to be unconstitutional.

While defendant relies in part upon *Brookhart* v. *Janis,* 384 U.S. 1, 16 L. Ed. 2d 314, 86 S. Ct. 1245, we believe the factual situation there clearly distinguishable, for appointed counsel there agreed to a *"prima facie"* trial, a unique proceeding recognized by some Ohio courts as a substitute for the Federal *nolo contendere* plea impermissible in Ohio. This *"prima facie"* trial agreement was characterized by the Supreme Court as the "practical equivalent of a plea of guilty" and inconsistent with the defendant's open-court statement that "I would like to point out in no way am I pleading guilty to this charge"; counsel was, in these circumstances, held without power to waive his client's con-

stitutional right to plead not guilty and confront and cross-examine the witnesses against him. We find neither the *Brookhart* holding nor our *dicta* in *Williams* apposite in the factual context presented here, and both of those cases do expressly recognize that counsel may preclude an accused from asserting constitutional claims. *Brookhart,* 384 U.S. 1, 6, 16 L. Ed. 2d 314, 86 S. Ct. 1245, 1248; see also, *Henry* v. *Mississippi,* 379 U.S. 443, 451, 13 L. Ed. 2d 408, 414, 85 S. Ct. 564, 569.

We do not agree with the defendant's contention that he was not proved guilty beyond a reasonable doubt. The problem here is essentially a question of credibility, with the complaining witness relating one version of events and the defense witnesses portraying a completely different picture. Officer Hycner corroborated the complainant's testimony insofar as it related to the loss of Esones' badge, while the testimony of the defendant's twin brother and three friends corresponded with the material aspects of the defendant's testimony. The trial judge believed the officers, and their testimony, if believed, was sufficient to establish guilt beyond a reasonable doubt. The defense witnesses offered no explanation as to how Esones' badge came to rest in the middle of Archer Avenue and this undisputed physical fact not only tends to corroborate the testimony of the complainant, but also tends to discount the credibility of the defendant and his witnesses all of whom denied ever seeing the badge.

The testimony of even one witness, if positive and credible, is sufficient to convict in a criminal prosecution in this State, even though it is contradicted by the accused. (*People* v. *Gray,* 33 Ill.2d 349, 356; *People* v. *Solomon,* 24 Ill.2d 586; *People* v. *Cox,* 22 Ill.2d 534.) We have recently stated: "When the trier of facts renders a decision based upon credible and substantial evidence which is sufficient to convict, that verdict is not subject to question on review merely because the judge or jury chose to believe the con-

412

sistent testimony presented by the State. *People* v. *Neukom*, 16 Ill.2d 340, 347; *People* v. *Stevens*, 11 Ill.2d 21; *People* v. *Kelly*, 8 Ill.2d 604." (*People* v. *Pelegri*, 39 Ill.2d 568, 574.) It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses (*People* v. *Mills*, 40 Ill.2d 4, 19; *People* v. *Anderson*, 30 Ill.2d 413; *People* v. *Orlando*, 380 Ill. 107, *cert.* denied 317 U.S. 694, 87 L. Ed. 555, 63 S. Ct. 435); and we will not reverse a criminal conviction where the evidence is not so improbable as to raise a reasonable doubt of guilt. *People* v. *Mills*; *People* v. *Ashley*, 18 Ill.2d 272, *cert.* denied 363 U.S. 815, 4 L. Ed. 2d 1157, 80 S. Ct. 1255.

The judgment of the circuit court of Cook County is affirmed.