560

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD JASPER, Defendant-Appellant.

(No. 54792; ▮▮▮▮▮▮▮▮)

First District—December 23, 1970.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Theodore A. Gottfried, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Laurence J. Bolon, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Defendant appeals from a judgment that sentenced him two to six years for theft from the person.* The sole issue is whether he was proven guilty beyond a reasonable doubt.

Betty Griffin, the complainant, testified that on October 9, 1968, about 6:30 P.M., she was waiting for a south-bound bus at East 63rd Street and King Drive in Chicago. She had in her possession an umbrella, two packages and her purse which contained a wallet with $15.00 or $17.00 in it. Standing about two feet from her was a man she described as about six feet two inches tall, of "[m]edium build and, * * * dark complected negro (*sic*). * * *" He had on "[a] brown hat with a brim, sort of

---

\* Ill. Rev. Stat. 1967, ch. 38, § 16—1.
 "§ 16—1. Theft.
  A person commits theft when he knowingly:
  (a) Obtains or exerts unauthorized control over property of the owner;
    * * *
        * * *
  (1) Intends to deprive the owner permanently of the use or benefit of the
    property * * *"

flopped down a little, and he had on a khaki jacket, I guess you'd call it khaki-colored jacket, and he had on black trousers and regular black shoes * * * [and] a white shirt."

When asked if she could describe the man's face, Miss Griffin replied, "[o]n the side of his face he had some little bumps or indentations, they call them pot (sic) marks or hair bumps, something similar to acne and he was missing teeth, you know, at the top." To Miss Griffin, the man "[l]ooked about 40 years old." After glancing at him, Miss Griffin continued to wait for the bus. About five minutes later one arrived and she entered it. As she did, a crowd of people tried to get on. Miss Griffin felt someone push her. She looked back and into the face of the man she had seen earlier. He was six or eight inches away from her. "[I]t was the same face with the pimples, or bumps on the face and teeth missing from the front, and dark complected negro (sic) with the hat." As Miss Griffin looked back at the man, she felt her purse drop. She looked and saw it was open. Looking back, she saw the man get off the bus. She saw his hands. He had her wallet. She saw him put her wallet in his jacket pocket. Miss Griffin remained on the bus and rode to 75th Street and King Drive. There she went into a beauty parlor and called the police. Policemen came and advised her to call them if she saw the man again.

The next day, at about the same time, Miss Griffin went to East 63rd Street and Cottage Grove. There, according to her testimony, she saw the man that she had seen the day before. She went to a drug store and called the police. Policemen came and drove Miss Griffin around the area looking; but they did not see the man. Then, the police officers drove Miss Griffin to East 63rd Street and King Drive. There she saw the man. She pointed him out to the policemen. They arrested him, put him in handcuffs and brought him to the squad car. Miss Griffin and the defendant were taken to a police station. There, when the two were left alone, defendant "[a]sked me if there was anything he could do to make this up and I said, 'no'."

At the trial, Miss Griffin identified defendant as the man she saw on East 63rd Street and King Drive October 9, 1968 and as the man she pointed out to the police the next day. Officer Gene Pitts testified that on October 10, sometime between 6:30 and 7:00 P.M., he responded to a call from a lady. He and his partner, Fred Galambos, went to East 63rd Street and Cottage Grove and there met Miss Betty Griffin. From that general area they drove to East 63rd Street and King Drive where Miss Griffin pointed to a man standing in the crowd. It was the defendant, Richard Jasper. Officer Pitts said that defendant was arrested, searched, (but nothing found on him) informed of his rights and then transported to the police station.

On his own behalf, defendant testified. He said that at 6:30 in the evening of October 9, 1968 he was in a billiard parlor a half block from his home. He stayed there until approximately 8:00 P.M., went home and then he caught a bus to 63rd and Dorchester Avenue, a poolroom there. He said the place had no name. He denied ever committing a theft from the person of Betty Griffin. When cross-examined, defendant said he lived with his aunt and uncle. The fellows with whom he played pool on December 9, were men he knew but never learned their names. At the time of trial he did not know the whereabouts of his aunt and uncle, or Tip, the owner of the billiard parlor nor of the fellows with whom he played.

After the defendant rested his case, the State in rebuttal, proved his felony convictions: February 1956, he was sentenced one to three years for larceny from a person. June 1947, he was charged with burglary, entered a plea of guilty to larceny and sentenced to serve not less than one nor more than three years. In a separate indictment, he was charged with larceny. He entered a plea of guilty and for that offense was sentenced to serve not less than one nor more than three years.

In questioning the sufficiency of the evidence, defendant attacks the testimony of Betty Griffin. She testified twice: once as defendant's witness in support of his motion to suppress identification testimony and once as the principal prosecution witness at trial. He argues that when she was his witness, she did not testify that she identified him as the man who took her wallet. This fact, defendant contends, made her identification of him vague and unsatisfactory and produced a conflict concerning vital facts, with the result the evidence failed to meet the necessary standard of proof.

We cannot agree. Our careful review of the record leads us to conclude that Miss Griffin's testimony was positive and credible. Although she was contradicted by the defendant, her testimony was sufficient to support the conviction. *People v. Novotny*, 41 Ill.2d 401, 411, 244 N.E.2d 182; *People v. Hardaway*, 108 Ill.App.2d 325, 247 N.E.2d 626. We affirm the judgment.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.