THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK JAMES DANDRIDGE, Defendant-Appellant.

(No. 11487;

Fourth District—April 18, 1972.

Matthew J. Moran, of Defender Project, of Chicago, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

In November 1968, William Stringer was accosted near the Masonic Temple parking lot in downtown Decatur by two men, one of them held a revolver to his head, told him not to turn around, and to hand over his money. Stringer was accompanied by a Nancy Towne. Both Stringer and Towne turned around and looked at the robber. Stringer surrendered his wallet which contained some $13. The money was taken from the wallet and the wallet was returned. The two robbers left the area—a lighted parking area. Stringer reported the incident to the police soon after the robbery.

At the trial of this case, Stringer testified that he had identified the defendant's picture among 35-40 photographs shown to him by the police a few days after the robbery. Some 14 months after the robbery, Stringer identified the defendant in a lineup consisting of four men similar in physical build to that of the defendant. The other witness, Nancy Towne, was unable to furnish identification of either of the robbers.

After this incident, the defendant, who was then on Illinois parole, was arrested in Indiana and pleaded guilty to a charge of assault and battery in that State. He was sentenced to an Indiana institution. This trial was subsequent to that incarceration. The defendant was convicted of the robbery of Stringer and sentenced to a term of not less than 4 nor more than 8 years in the Illinois State Penitentiary. The sentence as imposed was to be consecutive with the remainder of a prior sentence in Illinois upon the charge of grand theft.

By this appeal the defendant contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt and that the sentence was excessive, particularly with reference to that portion of the sentence requiring that it be consecutive.

■■ An examination of the evidence in this case reveals an absence of corroboration of the victim's testimony that he actually identified the defendant's photograph in police files; the lineup was 14 months after the robbery; and the victim's opportunity to view the defendant was for a period estimated at some 5 minutes. There is no indication that Stringer gave identification of the defendant to the police after the event and before the trial. The victim's testimony is that which links the defendant to the crime. We recognize the existence of several factors that would go to the credibility of the witness' identification. In this case, however, we are not persuaded that the victim's identification is such as to warrant our conclusion that there is an absence of credible testimony so as to create a reasonable doubt of guilt. Here the victim testified that he was face to face with the defendant for about 5 minutes in a lighted parking area and that he had ample opportunity to view the defendant. He expressed certainty as to the identification of the photograph and the lineup. In *People v. Novotny* (1970), 41 Ill.2d 401, 244 N.E.2d 182, the court noted that the testimony of even one witness if plausible and credible is sufficient to convict in a criminal prosecution in this State even though it is contradicted by the accused. That rule is applicable here and the credibility of the victim's testimony was for the jury.

The statutory penalty for this offense was then a minimum sentence of not less than 2 years with no statutorily defined maximum. The defendant had been sentenced in December 1965, when he was 17 years old, to the Illinois State Penitentiary for a period of 1-10 years for grand theft. The defendant's parole officer testified that his maximum sentence for the grand theft would expire in May 1972. In addition to the 1965 sentence, this record indicates that the defendant was paroled in March 1968 and was returned as a parole violater in June 1968. He was again released in November 1968. In December, 1968, the defendant was sentenced to 6 months in an Indiana institution.

■■ At the time sentence was imposed in this case, there was considerable discussion with reference to concurrent and consecutive sentence. The judgment and mittimus indicate that the sentence was to be consecutive with the sentence remaining to be served on the 1965 1-10 year sentence. Uncertainty attaches to the specification of consecutive sentence, however, when the trial judge observed that the original offense and this offense were separated by a long period of time and

that he had some recollection that under the new setup of the Department of Corrections they would do the deciding and would determine whether the sentence would be consecutive or concurrent. The record indicates some discussion of consecutive and concurrent sentence and the provision of our code of criminal procedure precluding concurrent sentences for separate acts occurring as a part of the same conduct or series of acts. In this respect, sec. 1—7(m) of the Criminal Code codifies the ruling of *People v. Schlenger*, 13 Ill.2d 63, 147 N.E.2d 316, and more recently in *People v. Stewart*, 45 Ill.2d 310, 259 N.E.2d 24, and *People v. Whittington*, 46 Ill.2d 405, 265 N.E.2d 679. The rules there expressed have no application here. The offenses with which we are here concerned are separate, distinct, and did not occur as part of the same conduct or series of acts. Under such circumstances, by reason of sec. 1—7(m), ch. 38, of the Criminal Code, the trial court is authorized to impose a concurrent or consecutive sentence.

In *People v. Kambrowski*, 412 Ill. 383, 107 N.E.2d 725, the court noted that uncertainty as to whether a sentence would be concurrent or consecutive would be resolved by making the sentence concurrent; that a consecutive sentence must be clearly manifest. (See also *People v. Walton*, 118 Ill.App.2d 324, 254 N.E.2d 190.) While there is no ambiguity with reference to the sentence, the record does indicate here a misconception as to the effect of the prior sentence and the subsequent sentence. The American Bar Association standards relating to sentencing alternatives and procedures in its approved draft is critical of consecutive sentences and suggests that such be limited to professional and dangerous criminals. The consequences of consecutive sentences can unnecessarily create difficulties exemplified by this record.

■■ In this case, the trial judge had available the imposition of an indeterminate sentence with a minimum of not less than 2 years. Thus, that which he may have sought to realize by consecutive sentence was available without it. If the sentence is to be consecutive to that which had previously been imposed, such necessarily requires that the defendant serve the maximum of the prior sentence prior to the commencement of serving the second and consecutive sentence. Thus, in circumstances where a defendant is given an indeterminate sentence of 1-10 years, and subsequently receives another sentence that is made to be consecutive, he does not start service on the second sentence until the expiration of the first. The existence of a pending consecutive sentence effectively precludes parole consideration and in effect requires service of the maximum of the first sentence. Only after the expiration of the total first sentence does the defendant start service of the second sentence. It is apparent that the imposition of a consecutive sentence under such circumstances

868

creates institutional and administrative difficulties that show in the writer's opinion the wisdom of the standards recommended by the American Bar Association.

■■ Notwithstanding the foregoing, Illinois law permits of consecutive or concurrent sentence under the circumstances shown by this record. The determination of whether the sentence is to be concurrent or consecutive is for the trial court and not for the Department of Corrections. That discretionary determination, like any exercise of discretion, is subject to judicial review. In this case, the record does not make the intention of the sentencing judge and his exercise of that discretion "clearly manifest". The judgment is affirmed. The sentence is vacated and the cause remanded to the circuit court for reimposition of sentence.

Judgment affirmed, sentence vacated, and cause remanded.

SIMKINS, J., concurs.

Mr. JUSTICE SMITH concurring in part and dissenting in part:

I concur in the majority opinion affirming the conviction in this case, but must respectfully dissent from the order vacating the sentence and remanding the cause and the reasons assigned for reaching that result.

The record shows a pronouncement by the court in these words: "We will show the sentence of the court to be that the defendant, Frank James Dandridge, is sentenced for an indeterminate term of not less than two years, four years is fixed as a minimum duration of imprisonment, and eight years is the maximum duration of imprisonment, and the sentence is ordered to be consecutive to the sentence heretofore imposed and under which the defendant still stands in Cause No. 65—CR—1865 out of this court and the defendant is ordered to pay the cost of prosecution". The language of this order and the mittimus leaves no room for the assertion that there is any ambiguity, uncertainty, doubt or misapprehension within its four corners that a consecutive sentence is ordered. Standing alone the intention to impose a consecutive sentence is "clearly manifest". The sole and single issue in this case then is not whether the judgment order is adequate but whether this is the judgment order the court intended to enter. If so, the judgment should be affirmed. If not, the order vacating the judgment is proper.

We turn to the record to determine the question of intention. There was a discussion between court and counsel in the presence of the defendant about the propriety of a consecutive sentence. The court demonstrated a clear understanding that the areas are rather limited where a consecutive sentence can be imposed and pointed out that there was considerable several years time spread between the events upon which the first sentence was imposed in 1965 and the events out of which

this sentence arose. The occurrence events were wholly separated. The court then stated: "I also have some dim recollection now under this new setup with the Department of Corrections if they are going to do the deciding for us. I know that they do  \*   \*   \*. Well, be that as it may, but I want to make this as complete as possible in order that there is no loose ends hanging here". The sentence above quoted was then stated by the judge in open court and the mittimus issued was in strict conformity with that pronouncement.

The majority concludes from these events that the intention of the judge is clouded. This is, I believe, a strained interpretation of this record. When the court said "be that as it may, he didn't want to leave any loose ends hanging" strikes me as a positive assertion by him that irrespective of what the Parole Board might do with the sentence, his order was a consecutive sentence and he correctly and adequately expressed it in the order itself. I see no occasion, therefore, for vacating the sentence or remanding the case for the trial judge to reassert an intention which seems to me to be already clearly evident in this record.

The discussion of the sentencing standards adopted by the American Bar Association and pointing out how the same penitentiary term time could have been accomplished by the trial judge without the use of consecutive sentences has no bearing upon the issue of the trial court's intent. I do not agree with the assertion that consecutive sentences unnecessarily create difficulties exemplified by this record nor do I agree that consecutive sentences in proper cases *per se* create institutional and administrative difficulties. Under our statute and under our decisions the trial court has a discretion. In my judgment on this record he properly exercised that discretion. I have no quarrel with the ABA standards when applied in appropriate cases as a guideline but not as a corset-like stricture on the discretion permitted the trial judge in the imposition of sentence under our decisions and our statute. They have no bearing on the narrow issue now before us as to whether or not the trial judge intended to impose a consecutive sentence. The sole issue here is intention and not the sentence he should impose. The issue is did the trial court judge do what he intended to do. In my judgment this record shows that the trial judge did do what he intended to do and properly did it. I go beyond the issue which is properly before us in approving this sentence only because obliquely and not directly my colleagues are not happy with the consecutive sentence. On this record I doubt that they are willing to find it an abuse of discretion. I see no reason to remand this case to the trial court to establish that which the sentencing order and the record already establish. I would therefore affirm *in toto*.