THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BOB ROBINSON, Defendant-Appellant.

(No. 72-192;

Second District—February 1, 1974.

Ralph Ruebner, Deputy Defender, of Elgin (Richard Wilson, Assistant Appellate Defender, of counsel), for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

In a prosecution for the offense of burglary the jury returned a verdict of guilty and the defendant was sentenced for a period of 3 to 7 years in the penitentiary. Defendant appeals contending that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (2) the trial court erred in improperly limiting the defendant in the presentation of his case; (3) the sentence is excessive, and (4) the Unified Code of Corrections is applicable and under its provisions the minimum term should be reduced from 3 years to 2 years and 4 months (so as to be not greater than ⅓ of the 7 year maximum term imposed).

The principal witness for the State was one Jerry Paschall who, with defendant and Philip Slayton, was indicted for the offense of burglary of the Lite House Lounge (Lounge). Paschall had pleaded guilty and in return for his testimony in this case was promised 3 years probation and 60 days suspended sentence. Prior to his testimony in the instant case he had served the 60 days in jail and was no longer incarcerated. He testified to these facts before the jury.

He further testified that Slayton and the defendant drove to the Lounge about 1:30 A.M., October 5, 1971. They went to the south (front) entrance door. Defendant broke a door glass to gain entry and Slayton let Paschall in through the back door. While defendant was looking for liquor, Paschall and Slayton searched for money and found a cigar box with change in it; broke open a pool table slot for change and

in trying to get money out of the cigarette machine, the machine fell and hit Slayton on the foot. The machine broke open and cigarettes and coins fell out. Paschall started putting the change in the cigar box. At this time defendant was still in the back looking for whiskey. All three stuffed change in their pockets and Slayton left soon after. When they saw a police squad car outside, the defendant and Paschall took cigarettes, several bottles of whiskey and the cigar box and went out and left the scene, driving away in a 1971 Pontiac automobile at high speed and with the lights out. The car was found abandoned a short distance away.

Defendant and Paschall were arrested separately in a nearby swamp-like area. Slayton was arrested the next afternoon with mud on his shoes and a limp which he said was caused by a fight in a tavern. Officer Haley of the Waukegan Police Department testified for the defense that he had seen Paschall and defendant together with one Melvin "Junior" Horn between 7 and 8 P.M. on October 4; that about 2:10 A.M., October 5, after Paschall was arrested and was "advised of his rights", Paschall stated Horn was with him but that Officer Haley "did not nail it down" whether Paschall was referring to "7 o'clock at night and not the burglary". One Monte Cornelius testified that he had seen Slayton in a tavern where Slayton slipped, fell down and then walked out fast "without any limp noticed". Defendant's brother, Bennie, a bartender at Mamma Mia's tavern, testified that defendant, Paschall and Slayton were at that tavern about midnight. He further testified that Paschall left alone about 1:30 A.M. on October 5 and that defendant and Slayton left "between 1:30 and 2:00 A.M." The above are the basic facts. More detailed facts are set forth in the companion case of *People v. Slayton* (1974), 16 Ill.App.3d 910, filed concurrently with this opinion.

The jury returned a verdict of guilty as to defendants Robinson and Slayton. Robinson was sentenced to 3 to 7 years and Slayton to 2 to 3 years.

■■ Defendant's first contention that the evidence was insufficient to prove him guilty relies primarily on an attack on the testimony of Paschall, an accomplice, and on some conflicts or discrepancies in the testimony. The testimony of an accomplice is competent evidence in a criminal trial. (*People v. Brown* (1966), 76 Ill.App.2d 362, 369, 222 N.E.2d 227.) Paschall's status as an accomplice and his agreement to testify against the defendant was made very clear to the jury and the jury was instructed that in determining the credibility of an accomplice witness it has a right to consider whether such witness was promised consideration in relation to his punishment for his testimony and his testimony is subject to suspicion and should be considered by it with caution. The uncorroborated testimony of an accomplice is sufficient to sustain the

conviction if it satisfies the trier of fact beyond a reasonable doubt. *People v. Farnsley* (1973), 53 Ill.2d 537, 544; *People v. Coleman* (1971), 49 Ill.2d 565, 573; *People v. Hammond* (1970), 45 Ill.2d 269, 279.

In *People v. Coddington* (1964), 31 Ill.2d 468, relied on by the defendant, the accomplice witness on whose uncorroborated testimony the conviction was based, had testified falsely that he had received no promise in return for his testimony and the testimony of the accomplice witness was impeached. In the instant case, Paschall admitted before the jury the consideration he received in return for his testimony and the jury was adequately instructed concerning the testimony of an accomplice and the caution with which it should be considered.

The evidence was sufficient to prove the defendant guilty beyond a reasonable doubt and the jury so decided. The reviewing court does not have the duty or privilege to substitute its judgment for the jury's as to the weight of disputed evidence or credibility of witnesses. *People v. Novotny* (1969), 41 Ill.2d 401, 412, 244 N.E.2d 182.

The few discrepancies or conflicts in testimony were adequately explained by the witnesses or were not unusual under the circumstances and we do not regard it necessary to discuss them. Suffice it to say that defendant's conviction was based on sufficient evidence. The testimony of the State's witnesses and the defendant's brother, Bennie, proved him guilty beyond a reasonable doubt.

Defendant next argues the court erred in ruling that the testimony offered by defendant's brother, Bennie, to the effect that defendant had told Bennie that defendant had been playing pool on the evening of October 4, was inadmissible. At the trial, defendant sought to establish that he had acquired the large amount of coins he had when arrested by playing pool for money. Defendant's brief acknowledges that defense counsel's goal in offering this testimony was obviously to establish the fact that the large amount of coins the defendant had on the night in question was the result of playing pool.

■■ In *People v. Carpenter* (1963), 28 Ill.2d 116, 121, 190 N.E.2d 738, 741, the court quoted and adopted the following statement from McCormick, Law of Evidence, sec. 225:

> " 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' "

That court emphasized that such testimonial offers must be rejected because of the lack of opportunity for "cross-examination of the party whose assertions are offered to prove the truth of the act asserted." In

this case the testimony sought to be introduced was hearsay and was properly excluded by the court.

Defendant further contends that his sentence was excessive and disparate with that imposed upon his co-defendant Slayton. Defendant was 30 years old at the time of the offense; had pleaded guilty to a felony-burglary in Wisconsin in 1963, resulting in probation. He violated that probation and was discharged in December of 1964 after serving 8 months and 21 days in prison. In 1966 he was convicted in Florida for breaking and entering with intent to commit a misdemeanor which resulted in a 4 year sentence of which he served 2 years and 9 months. Defendant Slayton's prior criminal record consisted of a 1965 conviction for driving while intoxicated and forfeiture of bond in connection therewith and a 1966 Florida conviction (with defendant Robinson) for breaking and entering, which resulted in a 3 year sentence of which he served 19 months.

● It is obvious defendant Robinson's prior record, which indicates a prior felony conviction for burglary, is more serious than Slayton's. From any reasonable view which may be taken from the record in this case, the sentence imposed on defendant Robinson is not excessive.

The final issue for us to consider is the propriety of the sentence. Defendant is correct in asserting that the Unified Code of Corrections, even though not in effect at the time of the sentencing, is nevertheless applicable to cases on appeal where final disposition has not yet been rendered. *People v. Chupich* (1973), 53 Ill.2d 572, 295 N.E.2d 1; Unified Code of Corrections, Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4.

■■ The State argues that the sentence imposed herein is not greater than that authorized by the new Code because of the amount of fine possible under the new Code and because of the mandatory period of parole automatically included under section 1005—8—1(e) of the Unified Code of Corrections, and therefore, the sentencing provisions of the new Code are not applicable. This court has previously decided that point in *People v. Smith* (1973), 10 Ill.App.3d 501, 506, 296 N.E.2d 15, 19, where we held as follows:

> "We do not believe that the legislature intended that a possible fine, and a possible violation of parole should be considered in determining which of the penalty provisions were less under the former statute or under the new code. To this court, the actual term of imprisonment is the criterion * * *."

Under the new Code, burglary is a Class II felony, punishable by imprisonment for not less than 1 or more than 20 years. This carries with it a mandatory 3 year parole period. Under prior law, the punishment set forth was imprisonment for from 1 to an indeterminate number of years.

The new Code limits the minimum sentence to not more than one-third of the maximum. Therefore, in accordance with the new Code, the cause must be remanded for resentencing. *People v. Pickett* (1973), 54 Ill.2d 280, 285.

The conviction is affirmed; the sentence is vacated, and the cause is remanded for sentencing pursuant to the provisions of the Unified Code of Corrections.

Affirmed and remanded with directions.

T. MORAN, P. J., and GUILD, J., concur.