THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY ROBINSON, Defendant-Appellee.

First District (5th Division)   No. 1—88—2073

Opinion filed December 7,1990.—Rehearing denied January 8, 1991.

Randolph N. Stone, Public Defender, of Chicago (Pamela Pfrang and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David R. Butzen, and Hal Garfinkel, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Stanley Robinson (Robinson) appeals a conviction and sentence for criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(b)) and attempted robbery (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4 (c)(4), 18—1(b)). Following a bench trial, Robinson was sentenced to 12 years with the Illinois Department of Corrections; a sentence of five years for attempted robbery to run concurrent with a sentence of 12 years for criminal sexual assault.

On appeal Robinson argues: (1) he was not proven guilty beyond a reasonable doubt; (2) he should not have been convicted of attempted robbery because no force was used until after the effort to take money was completed; and (3) a reversal of the robbery conviction re-

quires a resentencing hearing.

For the following reasons, we affirm the decision of the trial court.

The victim testified to the following sequence of events. Early in the morning on September 17, 1987, she left her apartment to visit a couple of friends. As she approached the security door leading to the apartment building, the victim observed two men behind her. The large apartment building where her friend lived had a locked outer door. The two men approached her as she attempted to enter the building. When questioned on direct examination whether the two men said anything to her, the victim stated, "the two guys was [sic] saying something and they started to approach me and so I got scared and juggled the door *** I ran up the steps, and they came behind me."

The two men followed her up the stairs. They were arguing. The individual accompanying the defendant told the defendant to leave the victim alone, and the defendant responded by saying, "No man, no man."

The individual, later identified as Robinson, started going through the victim's jeans saying, "I know you have money. What you doing up here? You have money? You have money." After searching the victim's front and back pockets, Robinson began beating her with a striped umbrella and kicking her over the head, neck, and chest. The wooden handle of the umbrella broke off as the defendant delivered blows to the victim's body. The victim testified that she placed her arms in front of her body as the defendant beat her. The defendant then took out his penis, positioned it towards her face and inserted it in her mouth.

As defendant placed his penis into the victim's mouth he stated, "I know you can do better than that." Subsequently, the defendant ordered the victim to pull down her pants, which she did. Shortly thereafter, the defendant pulled the victim to the first-floor landing and continued to force her to perform oral sex. The victim indicated that the lighting conditions of the first-floor landing were "lit up very well" and she was able to "see him very, very well."

The victim heard the police approach the front of the apartment building. The defendant ran up the stairs while the victim yelled for the police. The police arrived to find the victim exposed. She described her assailant as wearing a striped gray and black shirt with black pants, and that he was "very, very, very dark." In addition, the victim told the police that her assailant was carrying a striped umbrella with a light-colored, broken wooden handle. After giving the

police the description, she was taken to the hospital where she received medical treatment for injuries sustained during the beating. Following the medical treatment, the victim identified Robinson in a police lineup.

Officers Penzine and Pfaller of the Chicago police department both testified. Officer Penzine testified to the following. He received a radio dispatch of a disturbance on Ashland Avenue. As he approached the scene, Officer Pfaller had already arrived on the scene. The two officers proceeded to 6948 North Ashland, where they noticed a woman through the security door. The woman's pants were pulled down slightly above her ankles. He asked the victim what had happened to her and the victim responded that two black males had attempted to rob her. The victim told him that one of the individuals struck her on the head with an umbrella and forced her to have oral sex with him. After Officer Penzine escorted the victim to the hospital, he returned to the scene of the beating to search for the attacker. Shortly after returning to the scene of the beating, Officer Penzine received a radio dispatch which disclosed the defendant's alleged location. Officer Penzine drove to the defendant's apartment, where he met Sergeant Chandler and Officer Pfaller. Officer Penzine knocked on defendant's door, and a man later identified as Stanley Robinson appeared. The defendant was wearing dark pants and a gray, long-sleeved striped shirt. Upon entering the defendant's apartment, the officers noticed a striped umbrella with a broken handle standing in the corner.

Officer Pfaller testified that he arrived at defendant's alleged location just prior to Officer Penzine. The two officers entered the vestibule of the apartment building where they observed the victim run towards them with her pants pulled down slightly above her ankles. The victim described her attacker to Officer Pfaller as a black male, approximately 5 feet 7, 175 pounds, dressed in a gray striped shirt with dark pants. Additionally, Officer Pfaller testified that the lighting conditions of the hallway where the victim was attacked "were good."

Robinson testified on his own behalf. He denied attacking the victim, but admitted to having contact with her, claiming that she agreed to exchange sexual favors for cocaine. Robinson testified that he finished work at 5 p.m. on September 16, 1987, and went to his apartment for approximately one half hour. He left his apartment to "hang out at a park near Howard Street for a couple of hours." He then proceeded to Jonquil Street to meet a couple of friends. He consumed alcohol while he was on Jonquil Street. At approximately 8 p.m., he returned home and visited a friend of his located on the first floor of

his apartment building. Robinson purchased alcohol for himself and his friend. The two men watched cable television together for several hours. Robinson testified that he left his apartment and went to 6948 Ashland Street, where he purchased a half a gram of cocaine. Robinson was freebaseing the cocaine when he observed the victim enter the apartment.

Robinson testified that the victim approached him and indicated that she would exchange sexual favors for cocaine. He further testified that the victim smoked the cocaine but refused to have sex with him; consequently, when the victim attempted to leave the apartment, "he got kind of steamed and threw the umbrella at her."

Robinson argues that the victim's identification of him at the lineup was not sufficiently supported by the evidence. Specifically, Robinson claims that the victim was in a state of excitement and distraction due to a sustained beating, fear and effort to escape, and that her lineup identification was based solely on a vague recollection of commonly worn clothing which only defendant wore in the lineup. The factors to be considered in an identification issue are (1) the opportunity the victim had to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the time elapsed between the crime and the identification. *People v. Cohoon* (1984), 104 Ill. 2d 295, 472 N.E.2d 403.

Based on these factors and a review of the evidence, one must reject Robinson's argument that the State's case against him must fail because of a faulty identification. Robinson alleges that the victim was unable to look up and make observations of the attacker's personal features. Specifically, he alleges that her ability to observe and identify him was destroyed during the onset and course of the attack by self-protective interests and the trauma and fear of the beating and as a result she saw her attacker's lower clothing, lower anatomy and glimpsed his beach umbrella. Otherwise, the attacker was anonymous, thus leading the victim to identify Robinson by his commonly worn clothing. Considering the victim's observations before and during the beating in well-lit surroundings, we believe her identification was positive and credible.

The victim had the opportunity to observe her assailant prior to the sexual assault when defendant followed her and when the assailant searched her pants prior to the assault. In addition, the place where the assault took place was well lit. Regarding the length of time of the attack on the second floor, the victim stated, "It seemed

like an eternity, but I guess it was about four or five minutes, and then he drug [*sic*] me down to the first landing." Further, she stated that it took a couple of minutes for the defendant to drag her down to the first landing. Once on the first landing the victim couldn't say exactly how long the attack continued, but guessed "it wasn't a terribly, terribly long time."

During the assault Robinson told her she could do a better job and hit her on the head with the umbrella later found in his apartment. The victim testified that she described the defendant to the police as very, very, dark, wearing black pants and a gray striped shirt carrying a striped umbrella with a broken, light-colored wood handle. Officer Pfaller testified that the victim described her assailant as a "male black, approximately five foot seven, a hundred and seventy-five pounds, wearing a gray striped shirt, dark pants." The victim identified Robinson in a lineup within several hours of the assault. Her identification was positive, unequivocal and convincing. The victim testified she immediately picked out the defendant and that she would never forget him. She further stated that from the time she first observed the five persons in the lineup it took her half a second to identify Robinson as the defendant. The victim recalled that in the lineup Robinson still had the exact same clothes on. She later identified Robinson at the trial. These facts certainly meet the criteria of a proper identification.

█ A single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification. (*People v. Johnson* (1986), 114 Ill. 2d 170, 189, 499 N.E.2d 1355, 1359.) The facts that there may be discrepancies or omissions in an identification do not of themselves produce a reasonable doubt if a positive identification is made. (*People v. Harrison* (1978), 57 Ill. App. 3d 9, 15, 372 N.E.2d 915, 924.)

> "The credibility of an identification does not rest upon the type of facial description or other physical features which the complaining witness is able to relate. (*People v. McCall* [(1963)], 29 Ill. 2d 292, 295, 194 N.E.2d 222.) It depends rather upon whether the witness had a full and adequate opportunity to observe the defendant. (See *People v. Cattlett* [(1971)], 48 Ill. 2d 56, 63, 268 N.E.2d 378, and *People v. Brown* [(1973)], 14 Ill. App. 3d 242, 245, 302 N.E.2d 161.) A mere discrepancy in description, or an omission to note facial or other physical features, is not by itself sufficient to create a reasonable doubt of guilt." *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 19-20, 337 N.E.2d 454, 460.

*People v. Sakalas* (1980), 85 Ill. App. 3d 59, 69, 405 N.E.2d 1121, 1130.

There is no suggestion in the record that the police lineup during which the victim identified Robinson was suggestive or that the police prompted the victim to identify Robinson. All participants in the lineup were young male blacks, similar in height, weight, color of hair, and body build. Two of the men in the lineup were wearing dark pants. Both of these men had on a white shirt underneath another article of clothing. One was wearing a striped shirt and the other was wearing a dark jacket. Robinson testified that when the police arrived at his apartment he was wearing blue and white shorts and a T-shirt. Nothing in the record suggests that the police coerced Robinson to wear the black pants and gray striped shirt to the police station.

■ In *People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999, the defendant argued that the lineup from which he was identified was unnecessarily suggestive because the complaining witness had testified that the rapist was wearing a cardigan sweater at the time of the crime and as a result the complaining witness was led to identify him due to the fact that he was the only suspect in the lineup wearing a cardigan sweater. The court held that the fact that the defendant was wearing a cardigan sweater at the lineup was not so suggestive as to give rise to substantial likelihood of irreparable misidentification, especially since complainant had adequate opportunity to observe and identify her assailant on the morning of the rape. (*People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999.) In light of the evidence of the victim's opportunity to view Robinson during the attack, we do not find that the fact Robinson was wearing a striped shirt at the lineup was unnecessarily suggestive.

■ Any person who suffered the abuse that the victim in this case did would be excited. Excitement, rather than detract from an identification, could increase the powers to observe. On review the trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable, or implausible as to justify a reasonable doubt as to the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) We conclude Robinson's argument that his identification as the perpetrator of the crime was defective and that the State failed to carry its burden of proof because of a faulty identification lacks either substantive or procedural merit.

Robinson next contends that the use of force in the event occurred after the attempted taking of property and thus the attempted robbery conviction must fail. Defendant alleges that the facts recounted by the victim established the elements of the crime of at-

tempted theft rather than attempted robbery, thus leading to the conclusion that since attempted theft was neither a charged nor an included offense of attempted robbery, no conviction was available. This argument also lacks merit.

■ Robbery is the taking of "property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1987, ch. 38, par. 18—1.) If despite force or threat of force to take property, no property is taken, the offense is attempted robbery. (*People v. Was* (1974), 22 Ill. App. 3d 859, 318 N.E.2d 309.) To sustain a conviction for the offense of attempted robbery, the evidence must show a substantial step toward the taking of property from the person or presence of another by the use of force or the threat of imminent use of force and an intent toward that end. *People v. Steptoe* (1976), 35 Ill. App. 3d 1075, 343 N.E.2d 1.

■ However, the force sufficient to sustain the crime of robbery is force administered at any time during the criminal act. (*People v. Kennedy* (1973), 10 Ill. App. 3d 519, 294 N.E.2d 788; *People v. Ortiz* (1987), 156 Ill. App. 3d 170, 174, 509 N.E.2d 633.) Where force sufficient to constitute robbery is found from the taking of an article attached to the victim's person or clothing, it is said that a perpetrator could not have taken the item without use of force to overcome the physical resistance created by the attachment; as distinguished from "the mere physical effort" which must occur whenever any item, not attached to the person or clothing of the owner, is transferred from the owner to the taker. (*People v. Taylor* (1989), 129 Ill. 2d 80, 84, 541 N.E.2d 677, 679.) The force or threatened force need not transpire before or during the time the property is taken; the force may be used as part of a series of events constituting a single incident. *People v. Brown* (1966), 76 Ill. App. 2d 362, 222 N.E.2d 227.

■ In *People v. Brooks* (1990), 202 Ill. App. 3d 164, 559 N.E.2d 859, the plaintiff was seated on a bus when she felt something like someone had opened her purse. After discovering that her wallet was missing, she turned around and saw her wallet in the hands of the defendant. Plaintiff then demanded the return of her wallet, but the defendant pushed her left shoulder and ran away from the bus. The court held:

> "The victim here, after she became aware that defendant had positioned himself behind her and had reached into her purse and had taken her wallet, immediately offered verbal resistance to the taking, to which defendant responded by pushing her shoulder and then exiting the bus. We believe this force, used in a series of events involving a single incident and in response

to the victim's challenge immediately upon the taking and before defendant's departure, is sufficient to sustain the robbery conviction under Illinois case law." (*Brooks*, 202 Ill. App. 3d at 170.)

In the present case the victim testified as follows:

"THE VICTIM: He was going down in my pocket looking for money. All in my jean pockets. I had on blue jeans.

THE PEOPLE: What pockets on your jeans was he going into specifically?

THE VICTIM: My back pocket and my front pockets.

THE PEOPLE: Did he ask you for money before going into your pockets?

THE VICTIM: He said, I know you have money. What's you doing up here? You have money. You have money.

THE PEOPLE: What happened after he went through your pockets?

THE VICTIM: He started beating me and hitting me and hitting me with this umbrella and kicking me."

The evidence of defendant searching the victim, striking the victim with an umbrella, and sexually assaulting the victim after the search was all related to the initial attempt by defendant to gain control of her property. The force used adequately supports the crime of attempted robbery.

In his final point Robinson argues that because the attempted robbery conviction must be overturned, the court must remand this case for new sentencing on the sexual assault charge. Since we have concluded that the conviction of attempted robbery was proper, we must also affirm his sentence for both crimes.

Finally, we note that counsel for defendant uses the victim's name in his brief. There has been a considerable protest in the bar in Illinois about the use of a victim's name in briefs on appeal. In an appeal in criminal sex cases, the use of the name of a victim has little, if anything, to do with either the facts of a case or the law and merely tends to continue the hurt of an innocent victim of a brutal sex assault. We urge the public defender to cease the use of the names of the victims in such cases.

For all the above reasons, we affirm Robinson's conviction and the sentence imposed by the trial judge.

Judgment affirmed.

COCCIA and GORDON, JJ., concur.