THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY W. SHOEMAKER, Defendant-Appellant.

Fourth District Nos. 4—03—0744, 4—03—0930 cons.

Opinion filed June 30, 2005.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Chris Reif, State's Attorney, of Jacksonville (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

In May 2000, defendant, Tony W. Shoemaker, entered an open plea to one count of aggravated criminal sexual assault (720 ILCS 5/12—

14(a)(2) (West 1998)) and one count of home invasion (720 ILCS 5/12—11(a)(2) (West 1998)) committed on February 16, 2000. On June 16, 2000, the trial court sentenced defendant to consecutive 30-year prison terms, stating that in committing these crimes defendant had "forfeited his right to live among us." The trial court applied the "truth-in-sentencing" provision of the Unified Code of Corrections (Unified Code), requiring defendant to serve at least 85% of his sentence. See 730 ILCS 5/3—6—3(a)(2)(ii), (a)(2)(iii) (West 1998).

Defendant filed a number of *pro se* motions that essentially alleged ineffective assistance of counsel. The trial court struck those motions, stating that defendant could not file *pro se* motions while he was represented by counsel. On April 8, 2002, this court reversed the trial court's order striking defendant's *pro se* motions and remanded for a hearing on defendant's ineffective-assistance-of-counsel claim. *People v. Shoemaker*, No. 4—01—0300 (April 8, 2002) (unpublished order under Supreme Court Rule 23). On remand, the trial court appointed new counsel for defendant, who filed a posttrial motion urging the trial court to permit withdrawal of defendant's guilty plea, or in the alternative, reconsider the sentence imposed on defendant, on the basis defendant's trial counsel was ineffective. The court conducted a hearing on October 30, 2003, and denied the motion. Defendant filed a notice of appeal, docketed as No. 4—03—0930. Previously, on August 26, 2003, defendant filed a notice of appeal from the August 11, 2003, summary dismissal of his May 2003 postconviction petition, docketed as No. 4—03—0744. We have consolidated the appeals.

## I. BACKGROUND

At the June 16, 2000, sentencing hearing, evidence was presented that the victim had known defendant for about four years. Defendant's father owned a construction company that had done extensive work on the victim's home. Defendant broke into the home through a basement window. The victim was awakened when defendant entered her bedroom. From approximately 1 a.m. to 7 a.m., defendant sexually assaulted the victim, performing multiple sexual acts that were extremely painful to her. Defendant grabbed the victim by the hair and told her, "shut up or I'll kill you." Defendant repeatedly struck the victim. At one time, he knocked the wind out of her. She passed out once while being choked. Throughout the incident, defendant repeatedly told the victim he was going to kill her because he was not going to go back to prison.

Trial counsel's strategy at the June 2000 sentencing hearing was to discuss sentences other defendants had received in murder cases that had been before the trial court for sentencing. Counsel emphasized

that defendant did not kill anyone and asked for a sentence similar to those given in the murder cases. At the sentencing hearing, defendant's trial counsel made the following remarks:

"Your Honor, a few years ago I was appointed the [p]ublic [d]efender of Morgan County, and I took an oath to defend individuals to the best of my ability. I'd like to think that during that time— I've represented a few traffic cases, a few misdemeanors, maybe even a few felonies—that I actually helped somebody and they were happy that I represented them. But there are those cases that I'm appointed to represent that are just not much fun, and this is the *coup de grace*, so to speak. *What [defendant] did in February is one of the most filthy, disgusting, things I've ever heard of,* and I in no way am going to stand here and try to argue that it was not. It's sickening, it's disgusting, it's wrong, and he's going to prison today. And he knows that. *I mean, being around him I'm not real happy. I'm not friends with [defendant].* But, Your Honor, as I stated, I took an oath, and due to that I have to make sure [defendant] gets a fair sentence before this [c]ourt today.

Now, one thing I will say during my time appearing before this [c]ourt is I've been here on sentencing hearings for murder cases. I've been here for felonies, misdemeanors, [and] traffic cases. And this [c]ourt has always been very consistent with its sentencing guidelines, and that's one of the things I've always took pride in being before this [c]ourt is I know I'm going to get a fair sentence.

Now, with all the evidence we've heard here today from [the victim] and the victim[-]impact statement that she wrote and the information in the [presentence investigation report], one thing stands out, and that is the fact that she was able to write a victim[-]impact statement; that she was able to come here today and testify. And the point I'm trying to make, Your Honor, is that [the victim] is not dead. [She] is alive. She has her life. It's damaged. I'm not trying to say it's not. And I in no way wish to diminish the impact this is going to have on the rest of her life. But [defendant] is here today to be sentenced for aggravated criminal sexual assault and home invasion, not for murder." (Emphases added.)

Counsel then discussed the two previous murder cases before the court. Counsel pointed out one of the victims had been raped before being murdered and one of the defendants in that case received a 25-year sentence while the other received a 30-year sentence. In the other case, one defendant received 20 years' imprisonment while the other received a 25-year sentence.

Counsel then stated:

"Once again, Your Honor, I want to reiterate, I am in no way trying to diminish what happened here. But all we're asking for from

the [c]ourt is consistency. If the [c]ourt takes the State's recommendation and sentences [defendant] to 80 years in prison, what's the message we're sending out there? What's the message we're sending? Well, if you're going to do something like this you'd better kill your victim, because if you don't you're going to prison for a long time. But if you kill them now there's no evidence of home invasion, we don't know how long this whole thing took place, and you're going to get a lighter sentence. We're asking the [c]ourt to be consistent. We're asking the [c]ourt to sentence [defendant] consistently with the cases that have been before the [c]ourt in the past."

Defense counsel stated a sentence in the range of 20 to 24 years would be consistent with "the sentences that this [c]ourt has handed down in the past for murders. Defendant is not a murderer."

## II. ANALYSIS

Claims of ineffective assistance of counsel are examined under the two-pronged performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Harris*, 206 Ill. 2d 293, 303, 794 N.E.2d 181, 189 (2002); see W. LaFave, J. Israel & N. King, Criminal Procedure § 11.10(c), at 132 (2d ed. supp. 2005). Under *Strickland*, reviewing courts entertain a strong presumption that the attorney's performance was a product of sound trial strategy and professional judgment. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. However, where "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of [s]ixth [a]mendment rights that makes the adversary process itself presumptively unreliable." (Emphasis added.) *United States v. Cronic*, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047 (1984). A *Cronic* violation was found in *People v. Hattery*, 109 Ill. 2d 449, 488 N.E.2d 513 (1985), where defense counsel conceded the defendant was guilty of murder and eligible for the death penalty. The supreme court, however, concerned that an unscrupulous defense counsel might deliberately concede his client's guilt in order to lay the groundwork for a later reversal, has narrowly construed *Hattery*. *People v. Johnson*, 128 Ill. 2d 253, 269, 538 N.E.2d 1118, 1125 (1989). "In situations where there is overwhelming evidence of guilt and no defense, if counsel contests all charges he is liable to lose credibility with the trier of fact when it comes to charges where a legitimate defense exists." *Johnson*, 128 Ill. 2d at 270, 538 N.E.2d at 1125 (counsel asserted a theory of defense on a number of charges and vigorously contested that defendant was eligible for the death penalty). It is not necessarily ineffective assistance for a defense counsel to waive closing argument

at a capital sentencing hearing; waiving argument may have the advantage of preventing an impassioned rebuttal argument by the prosecutor. See *Bell v. Cone*, 535 U.S. 685, 701-02, 152 L. Ed. 2d 914, 931, 122 S. Ct. 1843, 1854 (2002).

The Supreme Court has refused to find ineffective assistance where counsel argued his client was a " 'bad person, lousy drug addict, stinking thief, jail bird.' " *Yarborough v. Gentry*, 540 U.S. 1, 3, 157 L. Ed. 2d 1, 6, 124 S. Ct. 1, 3 (2003). Although the right to effective assistance extends to closing arguments, deference is particularly important because of the broad range of defense strategy at that stage. *Yarborough*, 540 U.S. at 5-6, 157 L. Ed. 2d at 7-8, 124 S. Ct. at 4. The Court rejected the Ninth Circuit's criticism of the quoted remarks, which the Ninth Circuit apparently viewed

> "as a gratuitous swipe at Gentry's character. While confessing a client's shortcomings might remind the jury of facts they otherwise would have forgotten, it might also convince them to put aside facts they would have remembered in any event. This is precisely the sort of calculated risk that lies at the heart of an advocate's discretion. By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case." *Yarborough*, 540 U.S. at 9, 157 L. Ed. 2d at 10, 124 S. Ct. at 6.

The Supreme Court cited a number of works on trial techniques to support its position, concluding with Aristotle: " 'A speech should indicate to the audience that the speaker shares the attitudes of the listener, so that, in turn, the listener will respond positively to the views of the speaker.' " *Yarborough*, 540 U.S. at 11, 157 L. Ed. 2d at 11, 124 S. Ct. at 7, quoting P. Lagarias, Effective Closing Argument §§ 2.05 through 2.06, at 99-101 (1989) (citing Aristotle's Rhetoric).

This case has differences from *Yarborough. Yarborough* was a *habeas corpus* case, where the Ninth Circuit had reversed a finding of the state court. Judicial review of a defense attorney's summation is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough*, 540 U.S. at 6, 157 L. Ed. 2d at 8, 124 S. Ct. at 4. *Yarborough* also involved a closing argument to a jury, while the present case involved an argument to a judge, on sentencing. The remarks in the present case also appear to be more extensive than those in *Yarborough.* Nevertheless, we cannot say that defense counsel's representation in this case was ineffective.

This is not a case where defense counsel completely failed to test the prosecution's case. Certainly the argument that murderers received lesser sentences than the maximum nonextended consecutive sentences in this case was a reasonable argument. Nor can we conclude

that counsel's disparaging remarks were nothing more than "a gratuitous swipe at [defendant's] character." The argument was made to the trial court, not to a jury, and the trial court already knew that defendant's actions were filthy and disgusting. As in *Yarborough*, by candidly acknowledging his client's shortcomings, counsel may have built credibility with the court and persuaded the court to focus its attention not on defendant's character, but the sentencing structure that might punish defendant more severely than a murderer. Counsel's strategy does not constitute ineffective assistance simply because it was unsuccessful. *People v. Milton*, 354 Ill. App. 3d 283, 290, 820 N.E.2d 1074, 1079-80 (2004) (counsel conceded the defendant's possession of drugs but attacked element of knowledge).

Defendant also argues defense counsel was ineffective for failing to call him and several character witnesses to testify at the sentencing hearing. At the October 30, 2003, evidentiary hearing, defendant was given an opportunity to state what he could have testified to. Defendant was unable to add anything to the facts already known to the court. Defendant attached affidavits from his suggested character witnesses, but those affidavits said only that they had testimony they believed would have helped defendant. Defense counsel testified that he made a conscious choice not to put on family members to testify as to defendant's character. Defendant has failed to show that the witnesses would have made a difference in the sentence he received. See *People v. Jackson*, 149 Ill. 2d 540, 553-54, 599 N.E.2d 926, 932 (1992). The trial court did not err in summarily dismissing defendant's post-conviction petition.

### III. CONCLUSION

We affirm the trial court's judgment.

Affirmed.

TURNER and MYERSCOUGH, JJ., concur.