THIRD DIVISION
JULY 5, 2006

1-03-3456

THE PEOPLE OF THE STATE OF ILLINOIS,       )     Appeal from the
                             )    Circuit Court of

        Plaintiff-Appellee,           )    Cook County.
                             )
    v.                           )    No. 03 CR 5182
                             )
EARNEST COLLINS,              )    Honorable
                             )    Michael P. Toomin,
        Defendant-Appellant.     )    Judge Presiding.

JUSTICE ERICKSON delivered the opinion of the court:

Defendant Earnest Collins was convicted following a bench trial of one count of attempted robbery and one count of possession of a stolen motor vehicle and was sentenced to a prison term of nine years.  Defendant contends on appeal that: (1) the trial court violated his sixth amendment right to confront witnesses by (a) allowing the State to invoke the fifth amendment rights of the victim, Emmett Harrington, and (b) restricting defense counsel's cross-examination of Harrington about his prior convictions; (2) the State failed to prove he committed attempted robbery beyond a reasonable doubt; (3) his trial counsel was ineffective for failing to make a sufficient closing argument; and (4) the extended-term sentence imposed on his attempted robbery conviction is void.

BACKGROUND

The State's theory of the case was that on February 19, 2003, defendant drove off in a van in Harrington's possession after Harrington momentarily stepped away from it while the engine was running.  When Harrington caught up with and entered the van approximately two blocks later while it was stuck in traffic, defendant demanded money from Harrington and struck him on his neck.

Defendant's theory of the case was that Harrington agreed to purchase from him a handheld color television set and told defendant to wait for him in his van.  When both men were in the van, defendant asked Harrington to pay.  Harrington refused and attacked defendant.

1-03-3456

To support the theory that Harrington was the aggressor, defense counsel filed a pretrial motion seeking to admit evidence that on February 22, 2003, Harrington was arrested for battery. Counsel argued that such evidence was admissible as other crimes evidence and under the supreme court's decision in People v. Lynch, 104 Ill. 2d 194, 200, 470 N.E.2d 1018 (1984) (Lynch), which holds that when the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show the victim's violent nature or to support the defendant's version of the facts. Defense counsel acknowledged that this case did not involve self-defense. The State argued the evidence was not admissible under Lynch, but conceded it was relevant to show Harrington's biases, interests, or motives for testifying. The following also transpired:

"THE COURT: Well, how do you expect to prove this up, this evidence?

MR. STAHL [defense counsel]: Judge, I would need to either call the victim in that case or one of the police officers who personally witnessed the battery happening. *** I will be able to get a witness to the battery in the court."

The trial court allowed the motion, and defendant's trial began.

Harrington testified that on February 19, 2003, he was employed by Advanced Presort Services (APS) and was driving a 1997 Chevrolet van owned by APS collecting mail from various companies. At approximately 5:45 p.m., he was parked in an alley near 435 North LaSalle Street in Chicago. He momentarily departed from his van while the engine was running. He then noticed an individual, whom he identified as defendant, enter the van through the driver's side and drive away.

Harrington pursued the van on foot and caught up with it in approximately two blocks where it was stuck in traffic. Harrington entered the van and told defendant the van belonged to him and to pull over. Defendant said to Harrington "You got some money? Give me some money."

2

1-03-3456

Harrington then reached across defendant to grab the keys from the ignition. As he did so, defendant grabbed his wrist and a struggle ensued. Defendant swung at Harrington several times and hit him once on the left side of his neck. Harrington was able to get the keys from the ignition. The men continued to struggle, and eventually Harrington was able to open the driver's side door, causing both men to fall into the street. Harrington subdued defendant until police arrived. According to Harrington, neither he nor anyone else at APS gave defendant permission to enter the van.

Harrington admitted on direct examination that he previously had been convicted of two charges of possession of a controlled substance and had been sentenced to probation. He was again convicted of possession of a controlled substance and was sentenced to three years' imprisonment and received boot camp for violating his probation. Harrington admitted he was arrested for battery on February 22, 2003, but that that charge had been stricken with leave to reinstate prior to defendant's trial. No promises were made by either the office of the State's Attorney or the police regarding that case.

On cross-examination, defense counsel asked Harrington if the drugs he was convicted of possessing were for his own use or for sale. Harrington responded that they had been for sale. When counsel asked what kind of drugs they were, the trial court sustained the State's objection. Defense counsel asked Harrington if he received probation. Harrington replied that he did. When counsel asked "when you were put on probation you agreed that you were not going to violate the law again?" the court sustained the State's objection. When counsel asked Harrington if after being placed on probation, he committed another offense, the court again sustained the State's objection.

Defense counsel also asked Harrington about his battery arrest. The following transpired:

"Q. Three days after this offense happened, you committed a

battery?

3

1-03-3456

A. Yes, sir. It was a heads up fight.

***

Q. What do you mean when you say it's a head [sic] up fight?

MR. DRISCOLL [Assistant State's Attorney]: Judge, I am going to object to the witness getting into the facts of that case. I believe he has a Fifth Amendment, right. The case was SOLd back in April of 2003. We've already fronted the fact he was arrested for a battery. The disposition of that case – For him now to have to testify as to actual facts involved inside that battery, I think he – .

THE COURT: Sustained.

MR. STAHL: Judge, I think I thought that you had ruled in favor of my motion.

THE COURT: I did. I did. You indicated that you were going to bring it in through either the victim in that case or the police officer.

MR. STAHL: I also said I was going to cross examine the complainant.

THE COURT: Not as to the facts of the case, no.

MR. STAHL: Can I have the basis for why I am not allowed ask [sic] him those questions?

THE COURT: I think Mr. Driscoll he just articulated that.

MR. STAHL: Then I would ask that all his testimony be stricken.

***

4

1-03-3456

THE COURT: He has a privilege on that particular case. That case has nothing to do with this case other than it's proof of other crimes you indicated. And I told you that you could bring in that evidence not through him."

Defense counsel then ended his cross-examination of Harrington.

Officer Liarakos testified on direct examination that he responded to a call of a battery in progress and saw defendant and Harrington struggling on the ground near a van. When he got closer, he noticed that Harrington was holding defendant's wrists behind his back. Liarakos looked into the van and saw large bags of mail, envelopes, and packages. After speaking to Harrington, Liarakos arrested defendant and contacted detectives.

Detective Bradley testified that he spoke to defendant on February 20, 2003, at Northwestern Hospital, where he observed defendant had a swollen and bruised eye and nose. After first denying any involvement in the crime, defendant eventually told Bradley "that he observed the van parked at the curb with the engine running and that he needed a ride home up on North Sheridan Road and he took control of the vehicle." Defendant acknowledged he did not have permission to take the van.

After the State rested, and his motion for a directed finding was denied, defendant called Chicago Police Officer Theodorides to testify. Theodorides testified that at 2:15 a.m. on February 22, 2003, he arrested Harrington after he saw him on North Avenue "beating and stomping" on the face and body of an individual. Theodorides acknowledged that he did not know what the fight had been about.

Defendant testified that he approached Harrington on North LaSalle Street and offered to sell him a handheld color television set for $80. Defendant gave Harrington the set after Harrington agreed to buy it, and Harrington told defendant to wait in his van. Defendant waited in the

5

passenger side, and eventually Harrington entered the van and drove away. When they stopped at a light, defendant inquired if Harrington was going to buy the set. Harrington said "I'm not giving you shit. Get the fuck out of this van." After defendant told Harrington to give the set back, Harrington hit him in his right eye. Defendant tried to exit the van from the passenger's side, but was unable to because Harrington pulled him back into the van and began running his hands through defendant's pockets. The men wrestled and eventually fell out of the van. Shortly thereafter the police arrived. Defendant denied telling Detective Bradley that he took the van. Defendant also stated he had in his possession 18 Chicago Transit Authority (CTA) passes that his wife had given him that day.

On cross-examination, defendant stated that he told Officer Liarakos and Detective Bradley about the television set and that Harrington attacked him. In response to questioning from the court, defendant responded that he did not know what happened to the television set and that the police never recovered it.

Alitha Phillips testified by stipulation that she gave defendant several CTA bus passes on February 19, 2003. The defense then rested.

In rebuttal, both Officer Liarakos and Detective Bradley denied that defendant stated that he had tried to sell Harrington a television set and that Harrington punched him. Liarakos also testified he did not recover a television from the scene, but admitted on cross-examination that he had not searched the van and only looked into it through the windows. Liarakos also stated that although he asked defendant questions at the scene, defendant gave only "evasive answers" and seemed "dazed."

The State also presented, over defense counsel's objection, evidence of defendant's 1998 conviction for possession of a stolen motor vehicle.

The State opted not to make a closing statement but reserved rebuttal. Defense counsel's

closing statement consists of approximately four pages of the report of proceedings. In it, counsel challenged Harrington's version of the events and his credibility. Counsel also challenged the credibility of defendant's statement to Detective Bradley and argued it would not make sense for him to take a van to drive home if he possessed numerous CTA passes. Counsel focused on the events of February 22, 2003, arguing they demonstrated Harrington's temper and likelihood to "exhibit[] a physical manner." The State responded that it was defendant's version of the facts that did not make sense and argued the witnesses it presented were more credible.

The trial court found defendant guilty, finding defendant's version of the facts unbelievable, especially in light of the officers' impeaching testimony, and found the State's witnesses credible.

Defense counsel then filed a motion to reconsider, arguing that although the court granted defendant's pretrial motion to admit evidence of Harrington's subsequent arrest, the State improperly "invoked" Harrington's fifth amendment right. The State responded that defense counsel was able to bring out evidence of the battery, and that Harrington was the likely aggressor, through Officer Theodorides's testimony. The assistant State's Attorney reiterated that Harrington "had a Fifth Amendment right against self-incrimination." The trial court denied the motion and sentenced defendant to concurrent nine year prison terms for both offenses.

ANALYSIS

I

Defendant first contends he was denied his sixth amendment right to confront witnesses and to present a defense where the trial court allowed the State to invoke Harrington's fifth amendment privilege against self-incrimination, thereby ending defendant's cross-examination of Harrington about his battery arrest. Defendant argues: (1) only Harrington, and not the State, could invoke his fifth amendment privilege; and (2) the sixth amendment protects his right to cross-examine Harrington about his motives for testifying falsely. Defendant argues he was prejudiced by the trial

7

court's ruling because credibility was a key issue at trial and evidence of Harrington's violent nature was essential to his defense.

The fifth amendment provides in relevant part that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. An individual's fifth amendment right against self-incrimination is generally a personal right that may only be invoked by the individual claiming that right. See, e.g., People v. Adams, 283 Ill. App. 3d 520, 524, 669 N.E.2d 1331 (1996).

The State acknowledges the fifth amendment could only be invoked by Harrington, but asserts that the State did not invoke Harrington's fifth amendment privilege. This position is belied by the record, which clearly shows the reason the State objected to defense counsel's questions about Harrington's battery arrest was because Harrington "ha[d] a Fifth Amendment[] right." Additionally, the State argued in opposition to defendant's motion to reconsider "that [Harrington], being our victim, had a Fifth Amendment right against self-incrimination at that point."

It does not follow that defendant's confrontation rights were violated. The sixth amendment provides in part, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend VI. The sixth amendment protects a defendant's right to cross-examine witnesses about their potential biases, prejudices, interests, or motives to testify falsely. Davis v. Alaska, 415 U.S. 308, 316, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1110 (1974); People v. Ramey, 152 Ill. 2d 41, 67, 604 N.E.2d 275 (1992); People v. Nutall, 312 Ill. App. 3d 620, 626, 728 N.E.2d 597 (2000) (Nutall); People v. Averhart, 311 Ill. App. 3d 492, 496-97, 724 N.E.2d 154 (1999) .

In this case, evidence that Harrington's battery arrest had been stricken with leave to reinstate was relevant to show his potential interest, bias, or motive to testify, as this fact could cause one to infer that Harrington had motive to testify favorably for the State. See, e.g., People v.

Triplett, 108 Ill. 2d 463, 475, 485 N.E.2d 9 (1985); Nutall, 312 Ill. App. 3d at 627; In re T.S., 287 Ill. App. 3d 949, 955, 679 N.E.2d 468 (1997) (T.S.). The facts underlying what actually occurred during the alleged battery, however, are not relevant to show his potential biases or motives for testifying. In T.S., for example, this court held that the juvenile respondent in that case should have been allowed to cross-examine the victim about his arrests that had been stricken with leave to reinstate because they may have revealed the witness's motivation to lie and whether he contemplated any leniency in exchange for his testimony. T.S., 287 Ill. App. 3d at 956. In this case, defense counsel was not prohibited from asking Harrington about whether he had an arrest that had been stricken and whether this affected his motivation for testifying; rather, the court only limited counsel's ability to question Harrington "as to the facts of the [arrest]." As counsel was permitted to expose the fact finder to facts about Harrington's credibility, his right of confrontation was not violated.

Defendant asserts the facts underlying Harrington's arrest were relevant to support his theory of the case -- that Harrington was the aggressor -- and were therefore admissible under Lynch. We disagree. Lynch holds that evidence of a victim's violent nature may be introduced in cases where self-defense is raised to show that the victim was the aggressor. Lynch, 104 Ill. 2d at 200. In this case, self-defense is not at issue, and it does not apply to an attempted robbery charge. See 720 ILCS 5/2-8, 7-4(a) (West 2002) (self-defense does not apply in cases where one commits, or attempts to commit, a forcible felony such as robbery); see also People v. Lovings, 275 Ill. App. 3d 19, 24-25, 655 N.E.2d 1152 (1995) (declining to extend Lynch to apply to a robbery charge).

That being said, even if we were to agree with defendant's contention that his confrontation rights were violated, the error was harmless beyond a reasonable doubt. Three approaches are used to determine whether a trial error, such as the sixth amendment violation alleged here, was

harmless beyond a reasonable doubt: (1) focusing on the error to determine whether it may have contributed to the conviction; (2) examining the other evidence in the case to determine if overwhelming evidence supports the conviction; and (3) determining whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. People v. Patterson, 217 Ill. 2d 407, 428, 841 N.E.2d 889 (2005), citing People v. Wilkerson, 87 Ill. 2d 151, 157, 429 N.E.2d 526 (1981).

As to the first and third tests, it cannot be said in this case that limiting defendant's cross-examination of Harrington contributed to his convictions, as questions regarding Harrington's credibility, including his prior convictions and arrest, were brought to the attention of the trial court. Further, as to the second test, evidence of defendant's guilt was overwhelming. Although defendant frames the trial as a credibility contest between Harrington and himself, he overlooks that Harrington's version of the facts was corroborated by the arresting officer, Liarakos, who testified that when he arrived on the scene, Harrington was holding defendant's arms behind his back, and by Detective Bradley, who testified that defendant told him that he took the van in an attempt to drive home. Neither officer corroborated defendant's story, as neither recalled defendant stating that the encounter was about the sale of a television, and no televison was recovered.

II

Defendant next contends that his attempted robbery conviction must be reversed because the State failed to prove beyond a reasonable doubt that he attempted to take Harrington's money by the use of force or by threatening the imminent use of force.

When a defendant raises the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. People v. Lewis, 165 Ill. 2d 305, 336, 651 N.E.2d 72 (1995) (Lewis); People v. Merchant, 361 Ill. App. 3d 69,

72, 836 N.E.2d 820 (2005) (Merchant).

A person commits attempted robbery where he or she, with specific intent, takes a substantial step toward the commission of a robbery. 720 ILCS 5/8-4(a), 18-1(a) (West 2002); People v. Smith, 148 Ill. 2d 454, 458, 593 N.E.2d 533 (1992); People v. Robinson, 206 Ill. App. 3d 1046, 1053, 565 N.E.2d 206 (1990) (Robinson). A person commits robbery where he or she takes property from the person or presence of another by the use of force or by the threat of the imminent use of force. 720 ILCS 5/18-1(a) (West 2002). The force sufficient to sustain a conviction for robbery "is force administered at any time during the criminal act." Robinson, 206 Ill. App. 3d at 1053; see also Merchant, 361 Ill. App. 3d at 73 ("this court has sustained convictions for robbery where a struggle ensued following the taking or the perpetrator used force when escaping the scene"). However, there must be some concurrence between the use or threat of force and the taking of the victim's property. Lewis, 165 Ill. 2d at 339.

The indictment in this case alleged defendant "punched [Harrington] in the neck and demanded United States currency from the person of [Harrington], by the use of force or by threatening the imminent use of force, which constituted a substantial step toward the commission of the offense of robbery." Defendant acknowledges that the evidence shows he asked Harrington for money and punched him in the neck, but argues the punch and resulting struggle between the men was in response to Harrington's act of reaching across defendant to remove the keys from the van's ignition. Defendant asserts the punch was unrelated to his demand for money, which he describes as "an impulsive decision that was quickly forgotten."

Defendant relies primarily on People v. Runge, 346 Ill. App. 3d 500, 805 N.E.2d 632 (2004) (Runge), for support. In that case, the defendant was convicted of several crimes, including armed robbery, in relation to his escape from a Department of Human Services (DHS) facility located at a prison. The defendant, who was dressed in DHS-issued clothing provided to him for a court

1-03-3456

appearance, boarded a bus at the facility to take him to court. The defendant and another individual planned the escape and had in their possession pepper spray and handcuff keys. After taking control of the van and attacking the driver with pepper spray, the defendant and his accomplice escaped. The basis of the defendant's armed robbery charge was that he took the DHS-issued clothing by the use of force, the pepper spray.

The Third District reversed the defendant's conviction, finding that there was no concurrence between the defendant's use of force and the taking. Runge, 346 Ill. App. 3d at 505. The court noted: (1) the evidence did not show that the defendant used force or the threat of force when the clothing was issued to him; (2) the taking of the clothing and the force used to escape were not committed in a single series of continuous acts; but rather, "[d]uring the interval between the 'taking' and the use of force, [the] defendant boarded the van and put into action a plan to commit an unrelated, separate offense of escape"; and (3) the only use of force proved at trial, the use of the pepper spray, was not used as a means of acquiring the clothing, but rather constituted a separate act of aggravated battery. Runge, 346 Ill. App. 3d at 505. In reaching its decision, the court cited Lewis, 165 Ill. 2d 305, where our supreme court found the defendant's stabbing of the victim, rejecting assistance from the victim's daughter, and removing property from the victim's pocket constituted a single series of continuous acts, and People v. Johnson, 314 Ill. App. 3d 444, 450, 732 N.E.2d 100 (2000) (Johnson), where we reversed the defendant's armed robbery conviction because the defendant in that case left the car he had been in with the victim, entered a house, and returned to the car during the interval between the alleged taking and use of force.

In Merchant, 361 Ill. App. 3d at 69, a case relied upon by the State, the victim asked the defendant, who was counting a handful of money, if he had change for a $20 bill. The defendant snatched the $20 bill from the victim and told him to leave. The men then grabbed each other and began fighting. Shortly thereafter, the police arrested the defendant.

12

The court rejected the defendant's contention that the evidence supported a conviction for theft rather than robbery because the force he used in taking the victim's money was not contemporaneous with the taking of the property. Merchant, 361 Ill. App. 3d at 72. In reaching its decision, the court discussed several other cases and concluded that a robbery conviction may be upheld where a struggle ensues following the taking of the victim's property, at least where the taking of the property and the use of force were part of a single incident. Merchant, 361 Ill. App. 3d at 73 (distinguishing People v. Romo, 85 Ill. App. 3d 886, 407 N.E.2d 661 (1980)). The court then found the evidence sufficient to support a robbery conviction because the struggle ensued immediately following the defendant's taking of the victim's money, and because it could be inferred the men struggled over possession of the money. Merchant, 361 Ill. App. 3d at 75.

In Robinson, the defendant and another individual followed the victim into an apartment building. The defendant stated "'I know you have money. What you doing up here? You have money? You have money?'" as he searched the victim's jeans. Robinson, 206 Ill. App. 3d at 1048. After he finished searching her pockets, the defendant punched and kicked her and beat her with an umbrella. He also sexually assaulted her.

Relying in part on the principle that "[t]he force or threatened force need not transpire before or during the time the property is taken; the force may be used as part of a series of events constituting a single incident," the court rejected the defendant's contention that the evidence was insufficient to support his attempted robbery conviction. Robinson, 206 Ill. App. 3d at 1053. Rather, the court held that the defendant's actions of searching of the victim's pockets, beating her with an umbrella, and sexually assaulting her, were all related to his initial attempt to gain control of her property. Robinson, 206 Ill. App. 3d at 1054.

Robinson and Merchant both relied in part on this court's decision in People v. Brooks, 202 Ill. App. 3d 164, 559 N.E.2d 859 (1990) (Brooks). In that case, the victim, who was a passenger on

13

a bus, felt as though someone had opened her purse. She then discovered her wallet was missing and saw the defendant, who was sitting behind her, holding it. When the victim demanded the return of her wallet, the defendant pushed her left shoulder and ran from the bus. Brooks, 202 Ill. App. 3d at 168. The court rejected the defendant's contention that his robbery conviction could not be sustained because the push did not occur as part of the struggle for possession of the wallet as "[t]he force or threatened force need not transpire before or during the time the property is taken; the force may be used as part of a series of events constituting a single incident." Brooks, 202 Ill. App. 3d at 170, citing People v. Brown, 76 Ill. App. 2d 362, 222 N.E.2d 227 (1966).

In this case, defendant demanded money from Harrington after Harrington entered the van. Harrington then reached for the keys, and defendant punched him in the neck, causing a struggle. The State sufficiently proved that defendant's attempted taking occurred contemporaneous with the use of force. As in Lewis, Merchant, Robinson, and Brooks, and unlike in Runge and Johnson, in this case defendant's attempted taking and his use of force were part of a series of events constituting a single incident. Unlike in Runge and Johnson, there was no significant interval between the attempted taking and the use of force. Further, unlike in Runge, defendant did not intend to commit an unrelated, separate offense between the demand for money and the use of force. We do not believe that Harrington's reach for the keys separated defendant's demand for money and the punch into two separate incidents, and additionally believe a rational trier of fact could conclude the struggle was over possession of Harrington's money. We therefore conclude that a rational trier of fact could conclude from the evidence presented that defendant had the specific intent to take Harrington's money and took a substantial step toward that end by the use of force.

### III

Defendant next contends the trial court unduly restricted defense counsel's cross-

examination of Harrington about his prior convictions for possession of a controlled substance and his resulting punishment in violation of the sixth amendment.

The trial court has discretion to allow a party to impeach a witness with that witness's prior conviction for a felony or other crime involving dishonesty if that conviction, or the witness's release date from prison, was within 10 years. See People v. Montgomery, 47 Ill. 2d 510, 268 N.E.2d 695 (1971). As our supreme court said in People v. Boclair, 129 Ill. 2d 458, 477-78, 544 N.E.2d 715 (1989) (Boclair), "[t]he scope of cross-examination concerning the circumstances of a witness' prior conviction is within the trial court's sound discretion, and absent an abuse of that discretion which results in manifest prejudice to the defendant, the ruling will not be overturned on review." The abuse of discretion standard gives the most deference to the trial court and has been said to be "next to no review at all." In re D.T., 212 Ill. 2d 347, 356, 818 N.E.2d 1214 (2004).

In this case, the State, in anticipation of defendant's impeachment of Harrington, questioned him on direct examination about his prior convictions for possession of a controlled substance, his resulting terms of probation, his subsequent conviction for possession of a controlled substance, and his resulting three-year prison term. On cross-examination, defense counsel attempted to question him further about his prior convictions, probation, and prison term. Although the trial court allowed questions about whether the drugs Harrington possessed were for sale or for his personal use, the court sustained the State's objections to defense counsel's questions concerning: (1) what kinds of drugs they were; (2) whether if when he first received probation, he agreed not to violate the law again; and (3) whether when he was placed on probation for possession of a controlled substance, he committed another offense.

Defendant argues he should have been allowed to ask these questions of Harrington, whose credibility he asserts was the "linchpin" of the State's case. Defendant asserts these questions did not go to the facts underlying Harrington's convictions but were relevant to his

15

credibility. Defendant also asserts that because the State questioned Harrington about his convictions on direct, it "opened the door" to them, and that Harrington, who was a witness and not a defendant, is entitled to less protection concerning his prior convictions.

As the State points out, this case is similar to Boclair, where the defendant argued on appeal that although the trial court allowed cross-examination about the date and nature of a prosecution witness's prior murder conviction, it impermissibly limited cross-examination about the circumstances of the prior conviction. The court, after discussing the abuse of discretion standard stated:

> "While the State opened the door on direct examination by inquiring
> into the witness' past convictions, limits may be placed on the scope
> of cross-examination once the door has been opened. The opening
> is not a funnel through which the circumstances of prior convictions
> can be poured. The witness was not the one on trial and to dredge
> up the details of his prior conviction would only muddy the waters."
> Boclair, 129 Ill. 2d at 478.

In this case, details about Harrington's prior convictions were addressed on both direct and cross-examination. The court was made aware for what offenses Harrington was convicted, the punishment he received, and that he intended to sell the drugs he possessed. Further information about the convictions would serve only to "muddy the waters." No abuse of discretion occurred.

IV

Defendant next contends he was denied his sixth amendment right to the effective assistance of counsel because his attorney made an inadequate closing argument. Defendant argues that counsel should have accounted for why his testimony conflicted with the officers' testimony regarding the televison set. Defendant argues there was "a perfectly logical explanation"

16

for the inconsistency: that defendant "may have thought that he told the officers about the television set." (Emphasis in original.) Defendant argues he is therefore entitled to a new trial.

To demonstrate trial counsel's ineffectiveness, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) that this unreasonable performance prejudiced the defendant such that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) (Strickland); People v. Johnson, 218 Ill. 2d 125, 143-44, 842 N.E.2d 714 (2005); People v. Shoemaker, 358 Ill. App. 3d 257, 260, 831 N.E.2d 1201 (2005) (Shoemaker); see also Yarborough v. Gentry, 540 U.S. 1, 157 L. Ed. 2d 1, 124 S. Ct. 1 (2003) (Yarborough). The right to the effective assistance of counsel applies to closing arguments where "counsel has wide latitude in deciding how best to represent a client." Yarborough, 540 U.S. at 5-6, 157 L. Ed. 2d at 7-8, 124 S. Ct. at 4. Under Strickland, reviewing courts give strong deference to the attorney's performance and presume that performance was the product of sound trial strategy. Shoemaker, 358 Ill. App. 3d at 260.

In his closing statement, defense counsel in this case: (1) challenged Harrington's version of the facts; (2) challenged Harrington's credibility in light of his prior convictions and subsequent arrest; (3) challenged the credibility of defendant's statement to Bradley; and (4) pointed out that defendant would not need to steal a van to drive home if he had numerous CTA passes in his possession. It was reasonable for counsel to focus on these issues and forgo addressing the discrepancy in testimony about the television. Pointing out the differences between defendant's and the officers' testimonies may have served no purpose other than to remind the trial court that defendant's testimony indicating he told the officers about the set was impeached by not one, but two, police officers. Further, setting forth a theory that defendant only "thought" he told the officers about the television set, and that he would likely not remember what he told the officers due to

17

having just received a "fairly severe beating," may have only given the State fodder for a rebuttal argument establishing the unlikelihood of that scenario. See Yarborough, 540 U.S. at 7, 157 L. Ed. 2d at 9, 124 S. Ct. at 5 (it was reasonable for defense counsel to omit from closing argument facts that "the prosecutor could have exploited to great advantage in her rebuttal"). As counsel's performance was reasonable, defendant's ineffectiveness contention fails under Strickland.

V

Defendant's final contention is that his extended-term sentence for attempted robbery is void. Defendant argues the trial court had authority only to impose an extended sentence on the most serious offense of which he was convicted, possession of a stolen motor vehicle, because there was no substantial change in his criminal objective.

We initially reject the State's contention that defendant has forfeited this contention for review by failing to file a motion to reconsider his sentence. The imposition of an extended-term sentence without statutory authority results in a void sentence that is not subject to the rule of forfeiture. People v. Peacock, 359 Ill. App. 3d 326, 336-37, 833 N.E.2d 396 (2005) (Peacock).

In general, a sentencing court may impose an extended-term sentence pursuant to section 5-8-2(a) of the Unified Code of Corrections (the Code) (730 ILCS 5/5-8-2(a) (West 2002)) only on the offense with the most serious class. People v. Jordan, 103 Ill. 2d 192, 206, 469 N.E.2d 569 (1984) (Jordan). However, an exception to this rule applies where differing class offenses are separately charged and arise from "unrelated courses of conduct." People v. Coleman, 166 Ill. 2d 247, 257, 652 N.E.2d 322 (1995) (Coleman). To determine whether convictions arise from unrelated courses of conduct, courts apply the same test used to determine whether consecutive sentences are appropriate under section 5-8-4 of the Code (730 ILCS 5/5-8-4 (West 2002)): "whether there was a substantial change in the nature of the defendant's criminal objective." People v. Bell, 196 Ill. 2d 343, 354, 751 N.E.2d 1143 (2001) (Bell). Thus, "'where lesser and

18

greater class offenses are not committed as a part of a single course of conduct, an extended term may be imposed on a lesser offense.'" People v. Radford, 359 Ill. App. 3d 411, 420, 835 N.E.2d 127 (2005), quoting People v. Hummel, 352 Ill. App. 3d 269, 271, 815 N.E.2d 1172 (2004) (Hummel).

In this case, defendant was convicted of attempted robbery and possession of a stolen motor vehicle. Defendant represents that he received extended sentences for each offense, as the maximum nonextended sentence for possession of a stolen motor vehicle is seven years (730 ILCS 5/5-8-1(a)(5) (West 2002)), and the maximum nonextended sentence for attempted robbery is five years (730 ILCS 5/5-8-1(a)(6) (West 2002)). As attempted robbery is a Class 3 felony, and possession of a stolen motor vehicle is a Class 2 felony, under the general rule of Jordan, the court could only impose an extended-term sentence on defendant's possession of a stolen motor vehicle conviction, the most serious offense. Thus, defendant's attempted robbery extended-term sentence is proper only if the Coleman/Bell exception applies to this case. The issue, therefore, is whether there was a substantial change in the nature of defendant's conduct between when he initially drove away in the van and when he attempted to rob Harrington after Harrington caught up to and entered the van.

In Bell, the defendant and his friends followed the victim out of a bar and attacked him. Sometime during the course of the 15-minute beating, during which the defendant used a stick, the defendant took money from the victim's trousers. The defendant was convicted of armed robbery and aggravated battery, a lesser offense for which he received an extended sentence. The court held that the defendant's extended sentence was improper because there was no substantial change in the defendant's objective when he committed the two crimes. Therefore, the offenses were not the result of unrelated courses of conduct. Bell, 196 Ill. 2d at 355. In reaching its decision, the court deferred to the trial court's conclusion that the offenses occurred as a "single

course of conduct" when it imposed concurrent sentences.

In Peacock, the defendant entered his ex-girlfriend's apartment through her window and proceeded to beat her for over two hours. During the beating, the defendant continually told the victim that he loved her, that he wanted to marry her, and tried to convince her not to leave him. He was convicted of home invasion (Class X), aggravated battery (Class 3), and domestic battery with a previous domestic battery conviction (Class 4). The trial court ordered extended-term sentences on the two latter offenses and ordered all sentences to run consecutively. The Fourth District reversed, finding defendant's "overall objective" remained the same during the commission of all three offenses: to convince the victim not to leave him. Peacock, 359 Ill. App. 3d at 338. Because there was no substantial change in the defendant's objective, his offenses did not arise from unrelated courses of conduct, and the imposition of extended-term sentences on the lesser offenses was erroneous.

In Hummel, the defendant was convicted of burglary and aggravated battery, a lesser offense for which he received an extended-term sentence. He was sentenced to consecutive prison terms. The defendant had been waiting in a get-away car for his accomplices who burgled a store. After employees chased after his accomplices, the defendant drove his car into an employee who attempted to block his escape. The Third District rejected the defendant's challenge to his extended-term and consecutive sentences, finding that there was a substantial change in the nature of his objective between when the burglary and the aggravated battery occurred. The court found that although the defendant's original plan was to "stealthily obtain items of merchandise from the store, without the need for confrontation or violence," once the store employees gave chase, his "objective changed from merely avoiding detection to avoiding apprehension." Hummel, 352 Ill. App. 3d at 273. Because there was a substantial change in the defendant's objective, his offenses arose from unrelated courses of conduct and imposition of an extended-term sentence on the

20

lesser offense of aggravated battery was proper.

In reaching its decision, the court in <u>Hummel</u> followed <u>People v. Harris</u>, 39 Ill. App. 3d 1043, 351 N.E.2d 257 (1976) (<u>Harris</u>). In <u>Harris</u>, the court addressed whether the defendant's convictions for theft and battery resulted from a single course of conduct to allow consecutive sentencing under section 5-8-4 of the Code. In that case, the defendant's theft conviction resulted from taking property from a store without paying and his battery conviction resulted after he punched a security guard who confronted him. The court held there was a substantial change in the nature of the defendant's conduct, because although his initial goal was to shoplift property without violence, it changed to one of violence when he was confronted by the guard. <u>Harris</u>, 39 Ill. App. 3d at 1052-53.

This case is similar to <u>Hummel</u> and <u>Harris</u>. As in those cases, here defendant's first offense was one he sought to commit without violence; his goal was to enter the van without being seen and drive off in it. When Harrington caught up with him and entered the van, defendant's goal changed from avoiding detection to violently confronting the victim to obtain his money. Therefore, the court correctly found that defendant's actions arose from an unrelated course of conduct, making the extended-term sentence for his attempted robbery conviction proper.

CONCLUSION

Defendant's convictions and sentences are therefore affirmed.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.